SOUTHERN
PLANK-ROAD
COMPANY
v.
HIXON.

------◦●◦------

## THE SOUTHERN PLANK-ROAD COMPANY *v.* HIXON and Others.

It is error to grant a temporary injunction when there is no prayer therefor in the bill.

Where an injunction will affect the rights of persons who have no opportunity to be heard in opposition to it, the plaintiff, if he has not personal knowledge of the facts, must annex the affidavit of a person who has such knowledge.

Replevin will lie to recover the record-book of a corporation which has been wrongfully detained.

The articles of association of a company organized under the general plank-road law, provided that any director might be removed and the vacancy filled, at any meeting called for the purpose by any number of members whose shares constituted a "majority" of the whole amount of stock subscribed. *Held,* that a meeting called by those representing less than a "majority" of the stock, was void.

May Term,
1854.

SOUTHERN
PLANK-ROAD
COMPANY
v.
HIXON.

Wednesday,
May 31.

A party can not obtain a discharge from a stock-subscription on the ground of fraud, where he was himself a party to the fraud.

A member of a corporation can not be ejected without being afforded an opportunity to be heard.

APPEAL from the *Laporte* Circuit Court.

PERKINS, J.—Bill in chancery to obtain an injunction. A temporary injunction was granted in vacation, without notice to the defendants, but was dissolved at the next term of the Circuit Court. Appeal to this Court.

The bill states that certain persons organized themselves under the general plank-road law into a corporate body, in *May*, 1850, by articles providing, among other things, "that it was the object and purpose of said association to construct a plank road of such dimensions, structure and description as should be by said association thereafter determined upon, commencing at *Michigan City*, in the county of *Laporte*, and running south to *Clyburn's;* thence to the town of *Valparaiso*, *Porter* county, or to some point in that direction; the route to be determined by a majority of the votes of the association; and from time to time to make and construct such branch or branches thereto as the said association might deem to their interest. That it was also provided by said articles, that the capital stock of said company should be the sum of 10,000 dollars, and that the stock might be increased from time to time to such sum or sums as should be necessary and sufficient to complete said road and all such branches thereto as might from time to time be determined upon. That the affairs of the company should be conducted by a board of five directors who should be stockholders, and that any member of said board might be removed from office and the vacancy filled, at any meeting duly called for that purpose by any number of stockholders whose shares should constitute a majority of the whole amount of stock subscribed."

The bill then proceeds to set forth the progress made by the company, and gives the history of a heated controversy among the stockholders, in regard to building a branch of the road to a certain place called *Squatham*, and the final happy settlement of said controversy at a meeting of the stock-

May Term,
1854.

SOUTHERN
PLANK-ROAD
COMPANY
v.
HIXON.

holders, resulting (as was supposed) in entire harmony and a concurrence of opinion that said *Squatham* branch should be built. The bill then showeth "that shortly thereafter, said *Hixon* and certain others of his confederates again presented themselves before said board, and represented to them that an additional amount of stock could be taken at and about said *Clyburn's* corners, towards building the road from *Beaty's* to *Clyburn's*. That said *Hixon*, if permitted to take the record-book of said company for that purpose, could and would procure such subscriptions, and would himself enter into a contract with said board, on fair and reasonable terms, for building said road from *Beaty's* to *Clyburn's*, and would rely solely upon stock subscribed and to be subscribed at and around *Clyburn's* for his pay. That said board relied upon the assurances and promises of said *Hixon* and his confederates, and, at their instance, adopted an order to the effect that said *Hixon* be authorized to take the book of said company and obtain additional subscriptions to the capital stock of said company to the amount of 4,000 dollars. That said *Hixon*, as said company is informed and believes, proceeded to procure nominal subscriptions to the stock of said company from persons whose names are unknown to your orator or to the officers of the company. That on or about the 21st day of *May*," *Hixon* was ordered to return the subscription book, but had not done it. That the object of said *Hixon*, as now avowed, in obtaining said stock, was to enable himself and friends to get the control of said company, and arrest the building of said *Squatham* branch. That after this purpose is accomplished, said *Hixon* and his confederates intend to release the new stockholders from their subscriptions. "That on the 21st day of *May* instant, said confederates caused a paper purporting to be a notice, not signed, and having no names affixed thereto, to the stockholders, of a meeting of said stockholders, to be held at the office of the company on *Friday*, the 23d day of *May* instant, for the purpose of removing from office" the present directors, and having others elected in their stead, to be delivered to certain of the stockholders of said company.

May Term,
1854.

SOUTHERN
PLANK-ROAD
COMPANY
v.
HIXON.

The prayer of the bill is, that the defendants may be enjoined from attempting to remove the existing directory, and from opposing them in their course, and for general relief.

The verification of the bill is by *Ezekiel Folsom*, the president of the company, who swears, "that the above bill is true in substance and matter of fact, so far as the things are therein stated and set forth positively; and so far as therein stated as upon information and belief, he believes them to be true."

This verification was not sufficient to entitle the party to an injunction upon a good bill. The rule is that where an injunction will affect the rights of persons who have no opportunity to be heard in opposition to it, the plaintiff must, in addition to his own affidavit, where he has not personal knowledge of the facts, annex the affidavit of a person who has such knowledge. *Walker* v. *Devereaux*, 4 Paige C. R. 510.—*Bank of Orleans* v. *Skinner*, 9 *id*. 305.

The injunction in this case was also erroneously granted, because there was no prayer for a temporary injunction in the bill. *Walker* v. *Devereaux*, 4 Paige C. R. 229.

The Court below did right, therefore, in dissolving the injunction for the defects in the bill and verification above specified.

Nor do we discover that the bill makes a case calling for any interposition by a Court of Equity; and we have not been favored with a brief by the plaintiff's counsel, presenting the ground relied upon by them.

The record-book may be recovered, in an action of replevin, from *Hixon*, if wrongfully detained.

The meeting so fearfully apprehended, for the removal of the directory, not being called pursuant to the articles of association, upon a notice signed by those representing a majority of the stock, could accomplish nothing, and the existing directory would not be bound to open the office and hold a poll for an election at such meeting.

The question whether a branch road shall be made to *Squatham* or not, is, by the very terms of the articles of association, for a majority of the stockholders, and not for

a Court of Chancery, to decide; and so is the question whether the present directory shall be retained in office or not. And we do not see how a Court of Chancery can compel stockholders not to change their minds on these questions. The stockholders on one day may think it best to act one way in the premises, and the next day may bring to light disclosures amply justifying a change of opinion; and where no contract exists, binding to a particular course for a consideration, or other legal obstacle interferes, the right to change one's opinion can not be restrained by a Court of Chancery.

As to the order of the board for additional stock, and as to the stock subscribed under it, perhaps if they were obtained for a fraudulent purpose, the board should rescind the order and refuse to recognize the additional stock. Should they, however, receive said stock, the subscribers would be bound, as they could not be permitted to set up any fraud to which they were a party, as a ground for their own discharge. And should a new board, as feared, attempt to release them, perhaps an injunction might then lie. But should they release them, no injunction being interposed, then, by the articles of association, the remaining stockholders might call a meeting and eject the directory elected by the votes of said released stockholders, and thus resume the control of the company, obtaining, by this course, all that is asked from the Court.

At all events, under the statements in this bill, a Court could not interfere. It is alleged that persons are taking stock, under an order of the board, to obtain power to control and change the action of the company; but it is admitted that the persons, at least, many of them, are unknown to the plaintiff, and they are not, of course, made defendants to the bill. Now, surely, those persons can not be ejected from the corporation without being heard. If they have subscribed their stock in good faith, they are entitled to the rights such subscription gives them, and it should be after a full and fair hearing that they should be deprived of those rights.

May Term,
1854.

*Per Curiam.*—The decree is affirmed with costs.

*J. B. Niles* and *A. L. Osborn*, for the appellants.

*J. L. Jernegan*, for the appellees.