**William A. McKINNEY, Appellant–Respondent,**

v.

**Katherine J. McKINNEY, Appellee–Petitioner.**

No. 52A05–0405–CV–288.

Court of Appeals of Indiana.

Jan. 12, 2005.

---

---

Gary A. Cook, Peru, IN, for Appellant.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Respondent William A. McKinney ("Husband") appeals the trial court's issuance of a protective order against him and for the protection of Appellee–Petitioner Katherine J. McKinney ("Wife"). We affirm.

### Issue

On appeal, Husband raises two issues, which we consolidate and restate as whether his state, federal, and statutory procedural due process rights were violated when the trial court ordered him to forfeit the marital residence, which he and Wife jointly owned, without affording him the opportunity to present evidence and cross-examine witnesses.

### Facts and Procedural History

Prior to April of 2004, Husband and Wife were married and resided at 311 East 2nd Street in Peru, Indiana. Husband and Wife shared the marital residence with their five children. On April 22, 2004, Wife filed a petition for a protective order against Husband—as well as a request for a hearing—wherein she alleged that, by telephone, Husband threatened to physically harm her and her children. As relief, Wife requested that the trial court, in part, "[o]rder [Husband] to stay away from [her] residence, school, [and] place of employment." Appellant's App. at 5–6. Specifically, Wife asked the trial court to exclude Husband from the following locations: "602 Jackson Peru, 212 E. 3rd Peru, [and] 122 E. Franklin Peru."[1] *Id.* at 6. In response, the trial court issued an ex parte order for protection, pursuant to Indiana Code Section 34–26–5–10, and scheduled a hearing for April 29, 2003.

Husband, by counsel, and Wife attended the subsequent hearing on April 29, 2003. At the beginning of the hearing, the trial court placed the parties under oath. The trial court then asked Wife to explain the circumstances that prompted the filing of her petition for protective order. Wife testified that Husband had made two telephone calls to her wherein he was "screaming and yelling so loud [she] had to move the phone away from [her] ear." Tr. at 2. During the first telephone conversation, Husband threatened to "slam" Wife's son against the wall and, during the second conversation, Husband threatened to "beat on the boys because they weren't minding." *Id.* at 3–4. At the hearing, after providing this testimony, Wife orally re-

---

1. The marital residence at issue was not one of these three locations.

quested possession of the marital residence, i.e., 311 E. 2nd Street.

After its examination of Wife, the trial court asked Husband whether he had a problem with the issuance of the protective order. In response, Husband clarified that, while he contested Wife's allegations, he had no objection to the issuance of a protective order, which would prohibit him from having any contact with Wife. Rather, the sole objection that Husband raised against the issuance of the protective order was Wife's oral request to prohibit him from the marital residence. The following discussion between the trial court and Husband ensued:

> [Defense counsel:] The problem lies in the fact that [Husband] too has to live
>
> . . .
>
> [Court:] That's fine. Can we get to that next?
>
> [Defense counsel:] Yes.
>
> [Court:] Do you own more than one house [Husband?]
>
> [Husband:] We're purchasing more than one house.
>
> [Court:] Well same thing, okay.
>
> [Husband:] And the one house is not livable per se.
>
> [Court:] Tell me what is the address of that house?
>
> [Husband:] 313 East 2nd.
>
> [Defense counsel:] Judge, if I may, it's right beside the other house and it's the contiguous lot so I'm not sure that would . . . even if it were livable, would really solve the issue.

Tr. at 6–7.

At the conclusion of the hearing, the trial entered a two-year protective order against Husband, pursuant to Indiana Code Section 34–26–5–10, which provides in relevant part:

3. [Husband] shall be removed and excluded from the parties' marital residence beginning Sunday, May 2, 2004 at 6:00 P.M. [Husband] is then ordered to stay away from the residence, school, and/or place of employment of [Wife.] . . .

4. [Wife] shall have the possession and use of the residence and essential personal effects as follows: 311 East 2nd Street, Peru IN 46970.

Appellant's App. at 25. The trial court explained that it gave Wife possession of the marital residence because she has four children, whereas Husband has only one child, and the house was large enough to accommodate her family. It is from this order that Husband now appeals.

**Discussion and Decision**

On appeal, Husband argues that his state, federal, and statutory procedural due process rights were violated when the trial court prohibited him from residing at the marital residence, which he and Wife jointly owned, without affording him the opportunity to present evidence and cross-examine witnesses. At the outset, we observe that Wife chose not to file an Appellee's Brief. When an appellee fails to submit a brief in accordance with our rules, we need not undertake the burden of developing an argument for the appellee. *Johnson County Rural Elec. Membership Corp. v. Burnell*, 484 N.E.2d 989, 991 (Ind. Ct.App.1985). Indiana courts have long applied a less stringent standard of review with respect to showings of reversible error when an appellee fails to file a brief. *Id.* Thus, we may reverse the trial court if the appellant is able to establish prima facie error. *Jones v. Harner*, 684 N.E.2d 560, 562 n. 1 (Ind.Ct.App.1997). In this context, "prima facie" is defined as "at first sight, on first appearance, or on the face of it." *Id.* (internal citations omitted).

In the present case, Husband contends that, by not allowing him to present evidence and cross-examine witnesses, the trial court violated his right to a hearing under Indiana Code Section 34–26–5–10, his Fourteenth Amendment right to due process, and his due process rights under Article I, Section 12 of the Indiana Constitution. We separately address these arguments.

### I. Indiana Code Section 34–26–5–10

Husband first contends that the trial court denied him the right to a hearing pursuant to Indiana Code Section 34–26–5–10. In particular, Husband asserts that when the trial court denied him an opportunity to present testimony and cross-examine witnesses, it deprived him of a "hearing" under the Civil Protection Order Act ("CPOA"). Indiana Code Section 34–26–5–1, which governs the construction of the CPOA, provides that the CPOA "shall be construed to promote the: (1) protection and safety of all victims of domestic or family violence in a fair, prompt, and effective manner; and (2) prevention of future domestic and family violence." In addition, Indiana Code Section 34–26–5–10(a)(1) provides, in relevant part, that

where, as here, the trial court issues a protection order ex parte, provides relief under section 9(b),[2] and a party requests a hearing, the court shall set a date for a hearing on the petition. Such hearing must be held not more than thirty days after the request for a hearing is filed, unless continued by the court for good cause shown. Ind.Code § 34–26–5–10(a)(1).

The legislature did not define the term "hearing" as it appears in the CPOA. However, in *Essany v. Bower*, 790 N.E.2d 148, 152 (Ind.Ct.App.2003), another panel of this Court held that "when the legislature provided for hearings under CPOA, it intended that the petitioner, and the respondent if present, be permitted to call witnesses at those hearings."

Here, the record reveals that, during the hearing under Indiana Code Section 34–26–5–10, the trial court gave Husband the opportunity to contest Wife's allegations, which he did. At that time, Husband did not object to the issuance of the protective order, except as it pertained to the marital residence, nor did he request to call any

---

2. Indiana Code Section 34–26–5–9(b) provides:

A court may grant the following relief without notice and hearing in an ex parte order for protection or in an ex parte order for protection modification:

(1) Enjoin a respondent from threatening to commit or committing acts of domestic or family violence against a petitioner and each designated family or household member.

(2) Prohibit a respondent from harassing, annoying, telephoning, contacting, or directly or indirectly communicating with a petitioner.

(3) Remove and exclude a respondent from the residence of a petitioner, regardless of ownership of the residence.

(4) Order a respondent to stay away from the residence, school, or place of employment of a petitioner or a specified place

frequented by a petitioner and each designated family or household member.

(5) Order possession and use of the residence, an automobile, and other essential personal effects, regardless of the ownership of the residence, automobile, and essential personal effects. If possession is ordered under this subdivision, the court may direct a law enforcement officer to accompany a petitioner to the residence of the parties to:

(A) ensure that a petitioner is safely restored to possession of the residence, automobile, and other essential personal effects; or

(B) supervise a petitioner's or respondent's removal of personal belongings.

(6) Order other relief necessary to provide for the safety and welfare of a petitioner and each designated family or household member.

additional witnesses. Rather, Husband's sole complaint was that he, too, needed a place to live and, thus, he wished to remain in the marital residence. However, after discovering that the parties owned or were in the process of owning two houses, the trial court determined that, for at least the two-year time period pertinent to the protective order, Wife should receive the residence because she has four children and the residence would accommodate her large family. Based upon this evidence, we do not believe that Husband was denied a hearing pursuant to Indiana Code Section 34–26–5–10.[3]

## II. Federal and State Due Process Rights

Husband next argues that, by not allowing him to present evidence and cross-examine witnesses at the protective order hearing, the trial court violated his Fourteenth Amendment right to due process, as well as his rights under Article I, Section 12 of the Indiana Constitution. The Fourteenth Amendment of the United States Constitution prohibits any state from depriving a person of life, liberty, or property without due process of law. The due course of law provision of the Indiana Constitution provides that "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law." Indiana courts have consistently construed Article I, Section 12 of the Indiana Constitution as analogous to the federal due process clause. *See, e.g., Doe v. O'Connor,* 790 N.E.2d 985, 988 (Ind. 2003); *see also McIntosh v. Melroe Co.,* 729 N.E.2d 972, 976 (Ind.2000).

The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.[4] *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Austin v. Vanderburgh County Sheriff Merit Comm'n,* 761 N.E.2d 875, 879 (Ind.Ct.App. 2002). In the present case, Husband's interest in the marital residence, which he and Wife jointly own, is encompassed in

---

**3.** This determination is not altered by the fact that, at the conclusion of the protective order hearing, the trial court expressly refused to hear testimony from the parties on the issue of the marital residence. Indeed, while the trial court appears to have refused to hear certain evidence at the end of the hearing, it had already allowed Husband the opportunity to testify and, further, had decided that the best way to protect Wife and her family, i.e., its charge under the CPOA, was by giving her possession of the marital residence.

**4.** A finding of state action is also critical to an analysis under the Fourteenth Amendment due process clause:

Embedded in our Fourteenth Amendment jurisprudence is a dichotomy between state action, which is subject to scrutiny under the Amendment's Due Process Clause, and private conduct against which the Amendment affords no shield, no matter how unfair that conduct may be. As a general matter the protections of the Fourteenth Amendment do not extend to "private conduct abridging individual rights."
*Ind. High Sch. Athletic Ass'n v. Carlberg by Carlberg,* 694 N.E.2d 222, 248 (Ind.1997) (citations omitted), reh'g denied.

In civil cases, such as the one at bar, a private litigant engages in the conduct that abridges an individual's rights, i.e., such as the pursuit of a protective order. The only other possible state actor, therefore, is the court. In circumstances where there is significant action on the part of the trial court—a state actor—to sustain a constitutional challenge, the federal due process clause is implicated. *Wilson v. Kauffman,* 563 N.E.2d 610, 613 (Ind.Ct.App.1990), reh'g denied, trans. denied, cert. denied, 502 U.S. 968, 112 S.Ct. 439, 116 L.Ed.2d 458 (1991).

Here, the trial court entered the protective order that deprived Husband of his interest in the marital residence. Accordingly, there is sufficient state action to implicate Husband's due process rights.

the federal and state constitutional protection of property. Accordingly, the question before us becomes whether Husband received the process that he was due at the protective order hearing.

■ The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The nature of process due in a given situation turns on the balancing of three factors: (1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing governmental interest supporting use of the challenged procedure. *Id.* The balancing of these factors recognizes that, although due process is not dependent upon the underlying facts of the particular case, it is nevertheless "flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334 (quotations omitted).

In the case at bar, both the private interests and the countervailing governmental interests that are affected by the protective order proceeding are substantial. In particular, this action concerns the issuance of a protective order, which includes prohibiting a party from the marital residence, to prevent domestic abuse between a husband and a wife. As such, Husband's interest in maintaining his property and Wife's interest in remaining free from abuse are significant. Further, the State's, i.e., court's, interest in promoting the protection and safety of all victims of domestic or family violence in a fair, prompt, and effective manner, as well as preventing future domestic and family violence is likewise substantial.

When balancing the competing interests of the parties and the State, noting that Wife's interest is aligned with the State's, we must also consider the risk of error created by the challenged procedure. *See Mathews*, 424 U.S. at 333, 96 S.Ct. 893. Here, the risk of error created by conducting a protective order hearing with the respondent and his counsel present is not substantial because he had the opportunity to present his position to the trial court through testimonial evidence at the hearing. In light of the State's compelling interest, which is consistent with Wife's interest, coupled with the fact that the challenged procedure did not create a substantial risk of error, Husband received the process that he was due under these circumstances. Accordingly, we find no error under the United States or Indiana Constitutions.

For the foregoing reasons, we affirm the trial court's issuance of the protective order in question.

Affirmed.

FRIEDLANDER, J., and DARDEN, J., concur.