Marietta SQUIBB, Appellant–Defendant,

v.

STATE of Indiana, ex rel. O. Wayne DAVIS, Indiana Securities Commissioner, Appellee–Plaintiff.

No. 71A03–0605–CV–212.

Court of Appeals of Indiana.

Jan. 31, 2007.

---

R. William Jonas, Jr., Hammerschmidt, Amaral & Jonas, South Bend, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Elizabeth Rogers, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

ROBB, Judge.

*Case Summary and Issues*

In this interlocutory appeal, Marietta Squibb appeals from the trial court's order

granting the State's motion for prejudgment attachment and garnishment, and the trial court's sua sponte issuance of a preliminary injunction. Mrs. Squibb raises the following issues: (1) whether the trial court properly issued the preliminary injunction; (2) whether the trial court properly considered evidence submitted by the State after the attachment and garnishment hearing; and (3) whether the trial court properly granted the State's motion for prejudgment attachment and garnishment. We conclude that the trial court abused its discretion in ordering the preliminary injunction, but that it acted properly in considering the evidence and in granting the State's motion for prejudgment attachment and garnishment.

*Facts and Procedural History*

After receiving complaints involving the sale of promissory notes, the Securities Division of the State of Indiana began an investigation of Mrs. Squibb, her husband Thomas Squibb, and Squibb Ventures.[1] Roughly thirty-five investors claimed to have purchased promissory notes for either the development of KOA campgrounds in Michigan, or a condo project in Florida. The investors complained that they were now being paid late, not at all, or with NSF checks. On February 20, 2006, the State filed an administrative complaint against the Squibbs, alleging that they had issued unregistered securities in violation of the Indiana Securities Act. On the same date, the State filed a Motion for Prejudgment Attachment and Garnishment. The trial court held a hearing on this motion on March 14, 2006. William Unger, an investor who had purchased promissory notes from either the Squibbs or Squibb Ventures, Kimberly Haskins, an investigator for the Securities Division, Mr. Squibb,[2] and Mrs. Squibb

---

1. Squibb Ventures' origin and classification are unknown.

2. Mr. Squibb took the stand, but invoked his privilege against self-incrimination.

appeared as witnesses at the hearing. Unger testified that he had been issued sixty-three promissory notes, totaling $336,000. He further testified that Mrs. Squibb had signed five renewal notes in her husband's capacity. Mrs. Squibb testified that she had no knowledge of and had not participated in Mr. Squibb's business or Squibb Ventures.

On March 24, 2006, the State filed a Motion to Supplement the Record With Newly Discovered Evidence, along with two promissory notes apparently signed by Mrs. Squibb and a transcript of a voicemail recording indicating that Mrs. Squibb had knowledge of the investments in KOA campgrounds. The trial court granted the State's motion the same day. On April 3, 2006, Mrs. Squibb filed an objection to the State's motion.[3] On April 13, 2006, the trial court issued its Findings of Fact, Conclusions of Law, and Order. The trial court found that sufficient evidence was introduced to give it reason to believe that Mrs. Squibb had knowingly sold unregistered securities in a fraudulent and deceitful manner. The trial court further found that evidence indicated that the Squibbs were either removing or were about to remove their property subject to execution, and that they had either disposed or were about to dispose of property with the intent to cheat, hinder, or delay investors. Pursuant to these findings, the trial court granted the State's motion for prejudgment attachment and garnishment, thereby freezing the Squibbs's accounts, and issued a preliminary injunction requiring the Squibbs "not to diminish, transfer, alienate or dispose of any substantial asset

without prior written authorization of this Court." Appellant's Appendix at 22. Mrs. Squibb now appeals both the trial court's order granting prejudgment attachment and garnishment, and the preliminary injunction.

### Discussion and Decision

### I. Preliminary Injunction

#### A. Standard of Review

■ An injunction is an "extraordinary equitable remedy" that should be granted rarely, and only when the law and facts both clearly favor the moving party. *Mayer v. BMR Properties, LLC,* 830 N.E.2d 971, 978 (Ind.Ct.App.2005). Whether to grant or deny a motion for preliminary injunction rests within the trial court's sound discretion, and we limit our review to whether the trial court clearly abused its discretion. *Id.*

#### B. Sua Sponte Preliminary Injunctions

■ In this case, the State did not request that the trial court enter a preliminary injunction enjoining Mrs. Squibb from disposing of any substantial asset.[4] Although there is a dearth of recent case law dealing with such a sua sponte issuance, the law seems to be well established that a trial court may not issue a preliminary injunction absent the request of a party. *Miller v. Shriner,* 86 Ind. 493, 495, 1882 WL 6484 (1882) ("Unless it be provided for by statute, it is error to grant a temporary injunction where there is no prayer therefor in the complaint."); *College Corner & R. Gravel Road Co. v. Moss,* 77 Ind. 139, 142, 1881 WL 6636 at *2

---

3. The record does not reveal whether the trial court responded to this objection.

4. In its complaint, the State did request "a preliminary and permanent injunction restraining and enjoining the Defendants, individually or severally, and persons acting in concert with them from continuing to offer and sell the promissory notes or other securities without compliance with the registration provisions of the Act ... [and] from violating anti-fraud provisions of the Act." Appellant's App. at 32.

(1881); *S. Plank Road Co. v. Hixon,* 5 Ind. 165, 1854 WL 3174 at *2 (1854) ("The injunction in this case was also erroneously granted, because there was no prayer for a temporary injunction in the bill."); *see also* Indiana Law Encyclopedia § 46 (West 1999) (citing *Miller* and *Moss* ). This case law is sufficient to require us to remand with instructions that the trial court dissolve the preliminary injunction. Also, as the issue has not been directly addressed recently, we note that modern case law and statutory law also imply that a preliminary injunction shall not be issued absent a party's specific request.

■ The trial rule governing injunctions implies that some sort of motion or request is a prerequisite for the issuance of a preliminary injunction. Indiana Trial Rule 65(A) indicates that "[n]o preliminary injunction shall be issued without an opportunity for a hearing upon notice to the adverse party." Although the rule does not explicitly so state, the logical reading indicates that the contemplated hearing must be one on a motion for a preliminary injunction. The principle purpose of notice is to alert a party to the nature and substance of the action against that party. The issuance of a preliminary injunction at a hearing not designated as one on a motion for such an injunction compromises the notice requirement.

Next, Indiana Code section 31–26–1–3 states that "[r]estraining orders and injunctions may be granted by the circuit courts or the judges of the circuit courts." When interpreting a statute, we must give every word meaning, and assume that the legislature used it intentionally. *Merritt v. State,* 829 N.E.2d 472, 475 (Ind.2005). The use of the word "granted" implies that there must be something to grant, i.e., a request or motion. Had the legislature intended to allow injunctions to be issued

sua sponte, it could have used "issued," or "ordered."

Further support for the conclusion that an injunction must be preceded by a motion or request comes from Indiana Code section 34–26–1–6, which states:

When it appears:

(1) in the complaint at the commencement of the action; or

(2) during the pendency of the action by affidavit;

that the defendant threatens, or is about to remove or dispose of the defendant's property, with intent to defraud the defendant's creditors, a temporary injunction may be granted, to restrain the removal or disposition of the defendant's property.

This statute indicates that some sort of request, either in the complaint, or during the action by affidavit must be made for a temporary injunction. Again, the legislature's use of the word "granted" implies that there must be a request or motion.

The language used in recent cases dealing with preliminary injunctions also implies that preliminary injunctions must be based on a motion, as the cases refer to the party benefited by the injunction as the "moving party." *See, e.g., City of Gary v. Mitchell,* 843 N.E.2d 929, 933 (Ind. Ct.App.2006) (preliminary injunctions should not be granted "except in rare instances in which the law and facts are clearly within the moving party's favor"); *Bigley v. MSD of Wayne Township Schools,* 823 N.E.2d 278, 282 (Ind.Ct.App. 2004), *trans. denied* (to obtain a preliminary injunction, the burden of proof is on "the moving party").

■ Finally, because of the extraordinary nature of a preliminary injunction, the legislature and the courts have developed procedural safeguards to ensure that they are issued cautiously. The party af-

fected by the preliminary injunction must have notice and the opportunity for a hearing. Ind. Trial R. 65(A). The party seeking the injunction has the burden of proving that the law and facts support its issuance. *Bigley,* 823 N.E.2d at 282. Before granting a preliminary injunction, the trial court must make special findings of fact, even if not requested to do so by the parties. Ind. Trial R. 52(A)(1); *City of Gary,* 843 N.E.2d at 933. Finally, a preliminary injunction is an interlocutory order, which the affected party may immediately appeal as a matter of right. Ind. Appellate Rule 14(A)(5); *Moser v. Moser,* 838 N.E.2d 532, 534–35 (Ind.Ct.App.2005), *trans. denied.* This recognition of the effect a preliminary injunction may have on a party reinforces our belief that the law in Indiana is, and has been for well over one hundred years, that a trial court does not have the authority to issue a preliminary injunction absent a party's specific request.

Because the State did not request that the trial court enjoin Mrs. Squibb from disposing of any substantial asset, we conclude that the trial court abused its discretion in issuing the preliminary injunction.

## II.  Newly Discovered Evidence

Ten days after the hearing, the State submitted additional evidence along with a Motion to Supplement the Record, which the trial court granted the same day. Mrs. Squibb argues that the trial court's admission and consideration of this evidence violated her due process rights.

### A.  Standard of Review

Whether to admit evidence lies within the sound discretion of the trial court. *Shepherd v. Truex,* 819 N.E.2d 457, 462 (Ind.Ct.App.2004). We afford the trial court's determination considerable discretion on appeal, and we will not reverse the trial court's decision unless an appellant

can show a manifest abuse of that discretion. *Id.*

### B.  Post–Hearing Admission of Evidence

■ We first address Mrs. Squibb's argument that the evidence submitted post-hearing was inadmissible hearsay. We need not address the parties' arguments regarding whether the evidence was in fact hearsay because "ex parte affidavits may be received as evidence in 'interlocutory or preliminary matters, although they would be but hearsay at trial.'" *Scott v. Crussen,* 741 N.E.2d 743, 747 (Ind.Ct.App. 2000), *trans. denied* (quoting *Indiana & Michigan Elec. Co. v. Pounds,* 426 N.E.2d 45, 48 (Ind.Ct.App.1981)). Therefore, whether or not this evidence is hearsay has no effect on its admissibility at this interlocutory hearing.

■ Mrs. Squibb also challenges the admission of the evidence on due process grounds. The three general requirements of due process are notice, an opportunity to be heard, and an opportunity to confront witnesses. *Ind. State Bd. of Educ. v. Brownsburg Cmty. Sch. Corp.,* 842 N.E.2d 885, 889 (Ind.Ct.App.2006). Notice must be "reasonably calculated, under all the circumstances, to afford the interested parties an opportunity to present their objections." *Id.* "Such notice must reasonably convey the required information to the affected party, must afford a reasonable time for that party to respond, and is constitutionally adequate when the practicalities and peculiarities of the case are reasonably met." *Id.* Our supreme court has recognized that due process is not "'a technical conception with a fixed content unrelated to time, place and circumstances,' but rather is a principle which should be flexibly applied, depending on the particular situation." *Clifft v. Ind. Dept. of State Revenue,* 660 N.E.2d 310, 318 (Ind.1995) (quoting *Mathews v.*

*Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

In the context of deprivations of property, "[d]ue process requirements can be adequately protected 'by procedures imposed *after* the government deprivation acts against the property.'" *State Bd. of Tax Comm'rs v. Garcia,* 766 N.E.2d 341, 347 n. 14 (Ind.2002) (quoting *Clifft,* 660 N.E.2d at 318) (emphasis in original). Therefore, "where property rights are involved, mere postponement of the opportunity to be heard is not a denial of due process if the opportunity ultimately given is adequate." *Id.*

When the government is the party seeking the prejudgment deprivation, courts engage in a three-part balancing test, considering: "(1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing governmental interest supporting use of the challenged procedure." *McKinney v. McKinney,* 820 N.E.2d 682, 688 (Ind.Ct. App.2005); *see Connecticut v. Doehr,* 501 U.S. 1, 11, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991) (quoting *Mathews,* 424 U.S. at 335, 96 S.Ct. 893).

Before addressing this test, we note that the majority of cases analyzing procedural due process requirements related to deprivations of property deal with challenges to statutory or administrative procedures through which a party is deprived of property. In this case, on the other hand, Mrs. Squibb does not argue that the statutory procedure through which a plaintiff may acquire prejudgment attachment violates due process rights. Instead, she complains that the State's actions through which evidence was introduced against her in this case deprived her of procedural due process. Therefore, although the cases analyzing statutory and administrative procedures through which

the State deprives parties of property interest are relevant to the extent that Mrs. Squibb's deprivation of property occurred prejudgment, neither the legislature nor an administrative body has prescribed the procedure through which the evidence was introduced against Mrs. Squibb. Therefore, the deference given to legislative or administrative policy considerations is not as relevant in this case. *See, e.g., State Bd. of Tax Comm'rs v. Mixmill Mfg. Co.,* 702 N.E.2d 701, 705 (Ind.1998) (noting that "this case presents delays in processing that presumably are the product of the legislature's decision," and that "this Court cannot legislate a remedy for an awkward but nonetheless constitutional method of reviewing taxpayer protests").

Under the first prong of the inquiry, we have no trouble concluding that the property rights affected by the garnishment and attachment are significant. *See N. Georgia Finishing, Inc. v. Di–Chem, Inc.,* 419 U.S. 601, 608, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) (prejudgment garnishment of corporation's accounts implicated due process clause, and "probability of irreparable injury . . . is sufficiently great so that some procedures are necessary to guard against the risk of initial error"); *cf. Doehr,* 501 U.S. at 11, 111 S.Ct. 2105 (concluding that effects of attachment to real estate are significant even where attachment does not interfere with owner's use of the property). Although prejudgment garnishment and attachment do not entail a permanent deprivation of property, "even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection." *Doehr,* 501 U.S. at 12, 111 S.Ct. 2105.

In the context of property, the mere postponement of an opportunity to be heard may be sufficient to satisfy due

process "if the opportunity ultimately given is adequate." *Clifft*, 660 N.E.2d at 318. In *Clifft*, our supreme court found that the imposition of the Controlled Substance Excise Tax before an opportunity to be heard did not violate the tax payer's due process rights because "the magnitude of the government's need to take action without administrative delay justifies the temporary deprivation of property which may occur." *Id.; cf. State v. Eames*, 565 N.W.2d 323, 328 (Iowa 1997) (citing *Clifft* as support for its determination that important government interests justified a similar statute). *Clifft*, however, does not stand for the proposition that every time the government deprives an individual of property, so long as the individual is eventually given a hearing, due process is satisfied. *Cf. Doehr*, 501 U.S. at 15, 111 S.Ct. 2105 (holding that even though a post-attachment hearing is available, "this would not cure the temporary deprivation that an earlier hearing might have prevented"); *accord United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 56, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993). We conclude that the nature of the deprivation here, denial of access to one's bank accounts, even though temporary, weighs in Mrs. Squibb's favor.

Under the second prong, we conclude that the risk of an erroneous deprivation is comparatively low, and that this factor weighs in the government's favor. *See, e.g., Doehr*, 501 U.S. at 1, 111 S.Ct. 2105 (Connecticut statute allowed judge to order prejudgment attachment without prior notice or hearing, but merely upon party's verification that his or her claim is supported by probable cause). In *McKinney*, after concluding that the first and third prongs balanced, we found the appellant's due process rights were not violated because the risk of erroneous deprivation was not great. 820 N.E.2d at 688. Although the appellant was not permitted to cross-examine witnesses or present evidence at a protective order hearing, at which he was ordered to vacate the marital residence, the appellant was present at the hearing with his counsel, and had the opportunity to present his position to the court by testimonial evidence. *Id.* at 686. We also noted that both parties were prohibited from presenting evidence on the issue of which party would live in the marital residence. *Id.* at 687 n. 3. Mrs. Squibb had the opportunity to explain her general position and deny the State's allegations prior to the deprivation. We also note that the evidence submitted post-hearing merely bolstered claims already made by the State, and did not support new allegations to which Mrs. Squibb had no opportunity to respond. Therefore, the risk of erroneous deprivation is not nearly as great as a deprivation made without a hearing, and this factor weighs in favor of the State.

■ The third prong also weighs in favor of the State. The very nature of the attachment and garnishment order was to maintain the status quo between the parties and to ensure that the Squibbs did not dissipate their assets before satisfying their creditors' claims. Before taking this step, Mrs. Squibb was given a hearing and opportunity to respond to the State's allegations. We acknowledge that the hearing would have been more meaningful had Mrs. Squibb known of the State's evidence submitted post-hearing. However, the State will give Mrs. Squibb an opportunity to respond to this evidence at trial. Due process does not require that the State provide a party with a full trial on the merits before the preliminary issuance of an order of garnishment or attachment. *Cf. Clifft*, 660 N.E.2d at 318 (due process satisfied where government collects tax assessment before providing administrative hearing and opportunity for judicial review); *Hayden v. Hite*, 437 N.E.2d 133,

136 (Ind.Ct.App.1982) (due process satisfied where court issued preliminary order suspending husband's child support obligations followed by notice and opportunity for a hearing); *Wardship of Nahrwold v. Dept. of Pub. Welfare of Allen County*, 427 N.E.2d 474, 480 (Ind.Ct.App.1981) (due process satisfied where mother was denied opportunity to call character witnesses at hearing to determine if probable cause existed to detain child and file CHINS petition, but would eventually be given a full adjudicatory hearing).

After balancing all the factors, we conclude that the trial court's admission and consideration of the evidence did not deny Mrs. Squibb due process. We are troubled that the trial court granted the State's motion the same day it received the evidence and before Mrs. Squibb had an opportunity to file an objection. However, given the preliminary nature of the hearing and considering that Mrs. Squibb will have full opportunity to explain and rebut this evidence, we cannot say that the admission of the evidence violated her due process rights.

### III. Trial Court's Grant of Prejudgment Garnishment and Attachment

■ Mrs. Squibb argues that the trial court failed to establish the statutory requirements for prejudgment garnishment and attachment. Mrs. Squibb first argues that this action is not one "for the recovery of money," and therefore does not fall under Indiana Code section 34–25–2–1.[5] We disagree. The State brought its claim under the Indiana Securities Act, particularly Indiana Code section 23–2–1–17.1. This section states in part: "Upon a proper showing by the commissioner, the court shall enter an order of the commissioner directing rescission, restitution, or disgorgement to a person who has violated this chapter or a rule or order under this chapter." In its complaint, the State requested that the trial court, among other things: "appoint a receiver to ... search out and recover ... all investor funds," and order the defendants to "disgorge all illegally obtained monies." Appellant's App. at 32. This action is clearly an action for the recovery of money.

■ Mrs. Squibb also argues that the State has failed to demonstrate that any of the six statutory conditions under which a plaintiff may obtain attachment exist in this case. This argument boils down to a claim that insufficient evidence exists to support the trial court's judgment. As in this case, when a party has requested findings of fact and conclusions of law,[6] we will affirm the trial court's judgment on any legal theory supported by the findings. *Wenzel v. Hopper & Galliher, P.C.*, 779 N.E.2d 30, 36 (Ind.Ct.App.2002), *trans. denied.* In reviewing the trial court's judgment, we apply the following two-tiered standard of review: (1) we determine whether the evidence supports the findings, and (2) we determine whether the findings support the judgment. *Sullivan Builders & Design, Inc. v. Home Lumber of New Haven, Inc.*, 834 N.E.2d 129, 134 (Ind.Ct.App.2005), *trans. denied.* We will set aside the trial court's findings only if they are clearly erroneous. *Id.* We will conclude that a finding is clearly erroneous only if no facts in the record support the finding either directly or by inference. *Id.* We cannot reweigh the evidence, will con-

---

**5.** Attachment may be ordered only "when the action is for the recovery of money" and at least one of several other factors is met. Ind. Code § 34–25–2–1(b).

**6.** Mrs. Squibb submitted a motion for special findings of fact. We also note that trial courts are required to issue findings of fact, without request, when granting or refusing a preliminary injunction.

sider the evidence most favorable to the judgment, and will draw all reasonable inferences in favor of the judgment. *Id.*

▮▮▮▮▮ In order to attach a defendant's property, one of the following circumstances must be present:

[the defendant]

(1) is, or one (1) of several defendants is, a foreign corporation or a nonresident of Indiana;

(2) is, or one (1) of several defendants is, secretly leaving or has left Indiana with intent to defraud the defendant's creditors;

(3) is concealed so that a summons cannot be served upon the defendant;

(4) is removing or about to remove the defendant's property subject to execution, or a material part of the property, outside Indiana, not leaving enough behind to satisfy the plaintiff's claim;

(5) has sold, conveyed, or otherwise disposed of the defendant's property subject to execution, or permitted the property to be sold with the fraudulent intent to cheat, hinder, or delay the defendant's creditors; or

(6) is about to sell, convey, or otherwise dispose of the defendant's property subject to execution with the fraudulent intent to cheat, hinder, or delay the defendant's creditors.

Ind.Code § 34–25–2–1(b). In a hearing on a motion for prejudgment attachment, the plaintiff is required to establish one of these elements by a preponderance of the evidence. *See Waring v. Fletcher,* 152 Ind. 620, 626, 52 N.E. 203, 205 (1898); *see also* Indiana Law Encyclopedia § 11 (West 1999) (citing *Waring* ).[7]

Here, the trial court found that Mrs. Squibb had been involved in the offer and sale of the promissory notes, that she had signed Mr. Squibb's name to various promissory notes, and that she had signed her own name to promissory notes. These findings were supported by an affidavit of the Securities Commissioner,[8] Unger's testimony that Mrs. Squibb had signed Mr. Squibb's name to various promissory notes, Mrs. Squibb's testimony that she had knowledge of Mr. Squibb issuing promissory notes, and the promissory notes and answering machine transcript submitted by the State post-hearing. The trial court also found that the Squibbs had recently sold their home, were in the process of closing various bank accounts, and that it was becoming difficult for the State

---

**7.** We recognize that a party is not required to offer evidence before a trial court may issue an order for prejudgment attachment, and that the mere recitation of the statutory language in an affidavit is sufficient. *Wee Scots, LLC v. Fleming,* 765 N.E.2d 668, 671 (Ind.Ct. App.2002). However, *Wee Scots* and the cases cited therein supporting its conclusion all dealt with situations in which no hearing was held on a motion for prejudgment attachment. *Id.* at 672 n. 2; *see Sweeny v. Cochran,* 19 Ind. 206, 206, 1862 WL 2288 at *1 (1862); *Theirman v. Vahle,* 32 Ind. 400, 401, 1869 WL 3396 at *1 (1869). *Wee Scots,* therefore, did not contradict *Waring.* Moreover, the *Wee Scots* court stated in a footnote that by Wee Scots's failure to request a hearing date, it "declined the opportunity to force Fleming to reveal the specific facts or 'evidence' support-

ing its motion to the trial court." 765 N.E.2d at 671 n. 2. Therefore, *Wee Scots* recognized that at a hearing on a motion for prejudgment attachment, the plaintiff is required to introduce evidence.

**8.** We recognize Mrs. Squibb's argument that an affidavit is akin to the State saying, "There's evidence against Mrs. Squibb because we say there is." Appellant's Reply Brief at 9. However, at this preliminary hearing, which is far from determinative of the eventual outcome of the suit, traditional rules of evidence do not apply, and affidavits, hearsay, and other evidence that may be later deemed inadmissible at trial may be received and considered as evidence. *Scott,* 741 N.E.2d at 747.

to track the Squibbs's assets. These findings were supported by the following evidence: (1) Mrs. Squibb's testimony that the Squibbs had recently sold their home and were currently living in an apartment, (2) Haskins's testimony that a bank account had been open for six weeks and then closed, with Mr. Squibb writing himself checks for $40,000 and $8,000; (3) Haskins's testimony that a second bank account had been closed; and (4) Haskins's testimony that the "trail of any assets [is] becoming difficult to find." Appellant's App. at 91. The trial court's findings that Mrs. Squibb was involved with the securities violations and that the Squibbs were "removing or are about to remove Defendant's property subject to execution,"[9] appellant's app. at 19, are sufficient to affirm the trial court's order of prejudgment garnishment and attachment.

▮ Finally, Mrs. Squibb argues that the trial court was not authorized to order garnishment. In support, Mrs. Squibb points to Indiana Code section 34–25–3–1, which states that prejudgment garnishment may be ordered "in all personal actions arising upon contract ... or upon a judgment or decree of any court." Mrs. Squibb argues that this action does not arise upon contract and that there has not been a judgment or decree. Regardless of the merits of this argument, Indiana Trial Rule 64(B)(3) authorizes garnishment "in favor of the plaintiff suing upon a claim for money, whether founded on contract, tort, equity or any other theory...." Therefore, the trial court was authorized in ordering prejudgment garnishment in this case. *See Bowyer Excavating, Inc. v. Comm'r, Ind. Dept. of Envtl. Mgmt.,* 671

N.E.2d 180, 185 (Ind.Ct.App.1996), *trans. denied.*

*Conclusion*

We hold that the trial court was not authorized to order the preliminary injunction, and remand with instructions that the trial court dissolve this injunction. We also hold that the trial court's consideration of the evidence submitted by the State after the preliminary hearing did not violate Mrs. Squibb's due process rights. We finally hold that sufficient evidence supported the trial court's order of prejudgment attachment and garnishment.

Affirmed in part, reversed in part, and remanded with instructions.

MATHIAS, J., concurs.

SULLIVAN, J., concurs as to Part I and concurs in result as to Part II and Part III.

9. Mrs. Squibb argues that the marital home, which is held in tenancy by the entireties, is not subject to execution, and therefore may not be subject of attachment. However, as we conclude that the trial court's finding that Mrs. Squibb was involved in the securities violations is supported by sufficient evidence, the marital home is subject to execution. Ind.Code § 34–55–10–2(c)(5) (tenant by the entireties exemption does not apply when spouses are jointly liable).