## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Dec 22 2015, 9:37 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Patrick A. Duff
Duff Law, LLC
Evansville, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Paternity of S.G., | December 22, 2015 |
| | Court of Appeals Case No. 82A01-1504-JP-262 |
| Woodson Goebel, | |
| *Appellant-Respondent,* | Appeal from the Vanderburgh Superior Court |
| v. | The Honorable J. August Straus, Magistrate |
| Jessica Hardin, | Trial Court Cause No. 82D01-0907-JP-413 |
| *Appellee-Petitioner.* | |

**Najam, Judge.**

# Statement of the Case

Woodson Goebel appeals the trial court's grant of Jessica Hardin's request to relocate to Montana with the parties' child, S.G., and denial of Goebel's Motion to Prevent Relocation and related Motion to Modify Custody. He raises two issues, which we consolidate and restate as follows: whether the trial court erred in determining that it was in S.G.'s best interest to remain in Hardin's primary physical custody and relocate to Montana.

We affirm.

# Facts and Procedural History

On March 8, 2009, at the age of fifteen, Hardin gave birth to the parties' child, S.G. On July 6, Goebel filed an emergency petition to establish his paternity of S.G. In October of 2009 the trial court approved the parties' Agreed Entry, which established Goebel's paternity and otherwise provided that the parties would have joint custody of S.G., with Hardin as the primary custodian, and Goebel having parenting time pursuant to the Indiana Parenting Time Guidelines.

From the time of S.G.'s birth until approximately July 2013, the parties and S.G. lived together off and on at Hardin's mother's house in Evansville and shared child care duties. During that time period Goebel occasionally stayed at his grandparents' house in Evansville for three to four months at a time, and S.G. frequently stayed overnight with them. In July 2013, Hardin obtained her own apartment in Evansville, where Goebel lived with her and S.G. off and on

until February 2014, when he relocated to Hobart to live with his aunt and mother. During the time Goebel lived at Hardin's apartment, he cared for S.G. on his own on three occasions when Hardin went out of town for a week or two at a time. After relocating to Hobart, Goebel commuted to Evansville on a bi-weekly basis to continue exercising his parenting time with S.G.

[5] In the summer of 2014, Goebel cared for S.G. on his own for several weeks while Hardin traveled to Montana to visit her fiancé, Ryan Bailey, who was in the Air Force. Hardin had met Bailey on an on-line dating site sometime in 2013 and had daily contact with him through Skype over the next year while he was stationed in Japan. S.G. also had frequent contact with Bailey through "Skype," although they had no physical contact prior to July 2014.

[6] On July 24, 2014, Hardin filed her Notice of Intent to Relocate with S.G. to Great Falls, Montana to live with her fiancé, and to "try[] to get away from [her] son's father." Appellant's App. at 11. On September 18, 2014, Goebel filed his objection to Hardin's notice of intent to relocate and requested a hearing. At a hearing on October 1, both parties agreed to submit to a drug test; Hardin's test came back positive for marijuana. On October 21, Goebel filed a Motion to Modify Custody.

[7] S.G. was a kindergartener at Cedar Hall Elementary School in Evansville during the 2014-15 school year. Hardin was responsible for getting S.G. to and from school. Hardin did not have a driver's license or an automobile. During the first semester of the 2014-15 school year, S.G. had nine unexcused absences

from school, three excused absences, and thirteen tardies. School officials informed Hardin that S.G.'s attendance must improve or else the Indiana Department of Child Services would have to be notified.

[8] Hardin and Bailey married in December 2014 on Hardin's twenty-first birthday. That same month, Goebel's parents cared for S.G. while Hardin was on vacation in Florida with Bailey and Goebel was working. Prior to the filing of Goebel's objection to relocation, Hardin had been liberal in allowing Goebel visitation with S.G. beyond that required under the Indiana Parenting Time Guidelines.

[9] The hearing on all pending motions took place on January 20 and February 25, 2015. Goebel played for the court a tape-recorded telephone conversation with Hardin from September 2014 in which Hardin had stated to Goebel that she would not allow him or his mother visitation with S.G. until after the court proceedings on relocation. She also had stated in the recording that she would be blocking Goebel's and his mother's telephone numbers, stating, "You want to make my life a living hell[,] I'm gonna do the same thing." Tr. at 158. Goebel did have parenting time with S.G. during the pendency of the court proceedings, but Hardin now did not allow Goebel anymore parenting time than the minimum required by the custody order and the Indiana Parenting Time Guidelines.

[10] At the hearing, Hardin testified that she had been arrested in June 2013 for drinking alcohol under age. Goebel's Exhibit B was a picture of Hardin

holding a beer in 2013, but Hardin testified that she had been using the beer as a prop for the picture and that she had not drunk any beer that day. Hardin testified that part of the reason she wished to relocate was to get S.G. away from Goebel. She also testified that Goebel had never paid child support for S.G. Hardin stated that Goebel's visitation with S.G. had been infrequent until she filed the Notice of Intent to Relocate. She also testified that she does not smoke marijuana regularly and has never smoked in front of S.G. Hardin stated that she had obtained the marijuana she did smoke from Goebel, an allegation that Goebel denied. Hardin testified that she was willing for Goebel to have visitation with S.G. and that her husband, Bailey, would pay for S.G. to visit Goebel once a year. Bailey testified that he would also pay for Hardin and S.G. to come to Evansville for the summers.

[11] There was evidence at the hearing that Hardin's mother, Angela Waddell, who lives in Evansville, had frequent contact with S.G. and provided frequent care for him. There was also evidence that Goebel's father, who lives in Evansville, had visitation with S.G. on occasion, and that Goebel's mother, who lives in Porter, had frequent visitation with S.G. Goebel, his parents, and Hardin's mother all testified that it would not be feasible for them to travel to Montana to continue frequent visitation with S.G. due to the distance and expense of travel. Goebel, his mother, and his Aunt, Brandy Powell, all testified that Goebel was a good father to S.G. and had a good father/son relationship with him.

[12] Hardin testified Goebel had been violent to her in the past, even in S.G.'s presence. Joseph Autry, Hardin's friend, testified he had heard Goebel threaten Hardin in the past, had seen marks and bruises on Hardin, and had heard from Hardin that Goebel had been violent to her, including pushing her down a flight of stairs. Austin Douglas, a friend of Hardin's brother, lived with Hardin and her mother and S.G. for a period of time in 2013 and testified that, during that time, he had witnessed Goebel and Hardin arguing and he had seen Goebel throw an ashtray at Hardin and shove Hardin. Goebel denied ever being violent to Hardin. Goebel also testified that, at some point after 2013, Hardin had physically attacked Goebel's mother, Billy Jo Roughrock.

[13] On March 4, 2015, the trial court issued its order granting Hardin's request to relocate and denying Goebel's objection to the proposed relocation and his motion to modify custody.[1] The trial court ordered that primary physical custody remain with Hardin, that Goebel have parenting time pursuant to Section III of the Indiana Parenting Time Guidelines ("Parenting Time When Distance is a Major Factor"), and that Hardin pay for two-thirds of all

---

[1] We note that the final order was issued by a magistrate, and was not approved by the superior court judge. Under Indiana law, magistrates do not have authority to issue final, appealable decisions in civil cases unless they are sitting as a judge pro tempore or special judge. Ind. Code § 33-23-5-5. However, "'it has been the long-standing policy of th[e supreme] court to view the authority of the officer appointed to try a case not as affecting the jurisdiction of the court' – and so 'the failure of a party to object at trial to the authority of a court officer to enter a final appealable order waives the issue for appeal.'" *B.B. v. B.C. (In re Adoption I.B.)*, 32 N.E.3d 1164, 1173 (Ind. 2015) (quoting *Floyd v. State*, 650 N.E.2d 28, 32 (Ind. 1994)). As neither party has ever raised the issue of the magistrate's authority in the instant case, it is waived on appeal and does not affect jurisdiction.

reasonable expenses for S.G.'s required visitation with Goebel. This appeal ensued.

# Discussion and Decision

*Standard of Review*

[14] Goebel argues that the trial court erred in determining that Hardin's relocation and continued primary physical custody of S.G. were in S.G.'s best interest. Hardin has not filed an appellee's brief.

> "Indiana courts have long applied a less stringent standard of review with respect to showings of reversible error when an appellee fails to file a brief." *McKinney v. McKinney*, 820 N.E.2d 682, 685 (Ind. Ct. App. 2005). Where no appellee's brief has been filed, the judgment may be reversed if the appellant's brief presents a prima facie case of error. *Id.* In this context, prima facie error is error at first sight, on first appearance, or on the face of it. *Id.*

*Van Wieren v. Van Wieren*, 858 N.E.2d 216, 221 (Ind. Ct. App. 2006).

[15] When the trial court does not make special findings, as the court did not here,[2] we review its decision as a general judgment. That is,

> the judgment will be affirmed if it can be sustained upon any legal theory consistent with the evidence. *See Dierckman v. Area Planning Comm'n*, 752 N.E.2d 99, 103 (Ind. Ct. App. 2001*), trans.*

---

[2] In an action to modify custody, a trial court is not required to make special findings unless requested by a party. *R.A.P. v. C.D.T. (In re Paternity of J.T.)*, 988 N.E.2d 398, 400 (Ind. Ct. App. 2013). Here, neither party requested special findings.

*denied*. In making this determination, we neither reweigh the evidence nor judge the credibility of witnesses. *Id*. Rather, we consider only the evidence most favorable to the judgment together with all reasonable inferences to be drawn therefrom. *Id*.

*Helmuth v. Distance Learning Systems Indiana, Inc.*, 837 N.E.2d 1085, 1089 (Ind. Ct. App. 2005).

*Relocation and Related Custody Modification*

[16] When a parent files a notice of intent to relocate, as Hardin did here, the non-relocating parent may object by filing a motion to prevent relocation and/or a motion to modify custody.[3] *Harpenau v. Harpenau (In re Marriage of Harpenau)*, 17 N.E.3d 342, 346 (Ind. Ct. App. 2014) (citing Ind. Code §§ 31-17-2.2-1(b) (2015); 31-17-2.2-5 (2015)). The relocating parent then has the burden of proving that the relocation is made in good faith and for legitimate purposes. I.C. § 31-17-2.2-5(c). If the relocating parent meets that burden, then the burden shifts to the non-relocating parent to show that the proposed relocation is not in the best interest of the child. I.C. § 31-17-2.2-5(d). In considering a proposed relocation, the trial court must weigh the following statutory factors:

---

[3] Goebel filed an objection to the relocation and a separate subsequent motion to modify custody. "If . . . the trial court reviews a request to modify custody *stemming from* a parent's plan to relocate, the court must assess the Relocation Factors, which 'incorporate[ ] all of the [Best Interest Factors][of the custody modification statute], but add[ ] some new ones.'" *Jarrell v. Jarrell*, 5 N.E.3d 1186, 1192 (Ind. Ct. App. 2014) (emphasis original) (quoting *Baxendale v. Raich*, 878 N.E.2d 1252, 1257 (Ind. 2008)), *trans. denied*. Therefore, we analyze Goebel's objection to relocation and motion to modify custody together.

(1) The distance involved in the proposed change of residence.

(2) The hardship and expense involved for the non-relocating individual to exercise parenting time or grandparent visitation.

(3) The feasibility of preserving the relationship between the non-relocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties.

(4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a non-relocating individual's contact with the child.

(5) The reasons provided by the:

    (A) relocating individual for seeking relocation; and

    (B) non-relocating parent for opposing the relocation of the child.

(6) Other factors affecting the best interest of the child.

I.C. § 31-17-2.2-1(b). The "[o]ther factors affecting the best interest of the child" include the statutory factors relevant to an initial custody order or modification thereof, such as the child's age and sex; the parents' wishes; the child's wishes; the child's relationship with parents, siblings, and other persons affecting the child's best interests; and the child's adjustment to home, school, and the community. I.C. § 31-17-2-8; *see also Baxendale v. Raich*, 878 N.E.2d

1252, 1257 (Ind. 2008). However, a parent's proposed relocation does not necessarily require a custody modification, and, in contrast to the modification statute, a relocation-based modification need not involve a substantial change to one of those "other factors" before modifying custody. *D.C. v. J.A.C.*, 977 N.E.2d 951, 954 (Ind. 2012) (citing *Baxendale*, 878 N.E.2d at 1257).

[17]     Here, the trial court's decision that Hardin made her request for relocation in good faith and for legitimate reasons was supported by the evidence. Although there was some evidence that Hardin was motivated by a wish for herself and S.G. to "get away from" Goebel, Appellant's App. at 11, there was also evidence that the main reason Hardin wished to relocate was because she had remarried and wanted to start a family life with her child and her new husband. Her husband is in the military and is currently stationed in Montana. There was evidence that he maintains a residence there and earns a salary that can support himself as well as Hardin and S.G. This evidence supports the trial court's decision that Hardin wished to relocate in good faith and for legitimate reasons. *See, e.g.*, *H.H. v. A.A.*, 3 N.E.3d 30, 36 (Ind. Ct. App. 2014) (finding mother's desire "to live and create a family life" with her new husband in Hawaii was a legitimate purpose). Goebel's argument to the contrary is simply a request that we reweigh the evidence, which we will not do. *Baxendale*, 878 N.E.2d at 1257-58.

[18]     Once the trial court found that Hardin's request to relocate was made in good faith and for legitimate reasons, the burden switched to Goebel to prove that the proposed relocation, including Hardin's continued primary physical custody of

S.G., was not in the child's best interest. Goebel has failed to present a prima facie case that the trial court erred in ruling that relocation and Hardin's related retention of primary physical custody of S.G. were in S.G.'s best interest.

[19] The first factor to consider under the relocation statute is the distance of the proposed relocation. I.C. § 31-17-2.2-1(b)(1). There was evidence that the proposed relocation involves a significant distance; Hardin estimated it was about 1,000 miles between Indiana and Montana. There was also evidence that such a relocation will cause some hardship and additional expense for Goebel and his parents when they seek to exercise visitation rights with S.G. I.C. § 31-17-2.2-1(b)(2) (second factor is hardship and expense). Of course, "mere inconvenience to the child and non-custodial parent resulting from a change of residence will not constitute a basis for changing custody to the other parent." *Hoos v. Hoos*, 562 N.E.2d 1292, 1294 (Ind. Ct. App. 1990). Rather, the trial court must look at all the surrounding circumstances to determine if the long distance relocation is in the child's best interest. *Id*. Thus, we have previously held that relocation was in the child's best interest where there was evidence that the relocating parent would pay to transport the child for long-distance visitation with the non-relocating parent, *In re Paternity of X.A.S. v. S.K.*, 928 N.E.2d 222, 226 (Ind. Ct. App. 2010), *trans. denied*, and where the parent-child relationship could be maintained long-distance through use of telecommunications in addition to in-person visitation, *id.*; *see also Gold v. Weather*, 14 N.E.3d 836, 845 (Ind. Ct. App. 2014) (relocation from Indiana to Georgia allowed because modern technology, in addition to in-person

visitation, made it feasible for the non-relocating parent to maintain a meaningful relationship with the child), *trans. denied*; *Keitzman v. Keitzman*, 992 N.E.2d 946, 950 (Ind. Ct. App. 2013) (allowing relocation to China where the non-relocating parent's relationship with the child could be preserved through use of telecommunications and exclusive parenting time during the child's visits to the United States).

[20] Here, Goebel's main objections to relocation were the expense and inconvenience of traveling between Montana and Indiana for visitation and the feasibility of maintaining a close relationship with S.G. from such a long distance. However, there was evidence that Hardin and her husband agreed to pay for some of the traveling expenses of Goebel and S.G. when they travel for visitation, and the trial court ordered Hardin to do so for two-thirds of the traveling expenses. Moreover, telecommunications such as Skype, e-mail, text, and telephone calls can help preserve Goebel's relationship with S.G. *Id*. Thus, evidence as to factors one through three of Indiana Code Section 31-17-2.2-1(b) support the trial court's decision to grant the request for relocation with physical custody remaining with Hardin.

[21] Goebel also failed to make a prima facie showing that any of the other factors in the relocation and modification of custody statutes required a denial of relocation and a related grant of modification of custody. As to factor four of Indiana Code Section 31-17-2.2-1(b), there was no evidence that Hardin had an "established pattern of conduct" of thwarting Goebel's visitation. Although Hardin expressed some interest in removing herself and S.G. from Goebel and

had one time threatened to deny Goebel visitation, the evidence shows that she has never denied Goebel the visitation rights to which he was entitled under the parties' custody agreement and the parenting time guidelines; rather, up until the court proceedings in this case, Hardin had granted Goebel parenting time with S.G. beyond that required by law. And Hardin testified that she would continue to allow Goebel parenting time pursuant to the guidelines.

[22] As to the "[o]ther factors affecting the best interest of the child," the evidence supports the trial court's judgment that relocation is in S.G.'s best interest, and Goebel has failed to show otherwise. I.C. §§ 31-17-2.2-1(b), -2-8. The evidence showed that 1) Hardin has been S.G.'s primary care-taker since S.G.'s birth; 2) Hardin has married Bailey, who has sufficient resources to support her and S.G.; 3) Bailey has a steady job in the military; 4) S.G. knows Bailey by speaking to him through "Skype"; 4) Hardin and Bailey are willing to pay for a portion of the traveling expenses of Goebel and S.G. when they travel for visitation; and 5) Bailey is willing to pay for Hardin and S.G. to travel to spend summers in Indiana, which will allow both Goebel and S.G.'s grandparents to have additional, extensive visitation with S.G.

[23] Still, Goebel alleges that Hardin's past under-age drinking, her positive drug test for marijuana, and S.G.'s poor attendance at school are reasons to deny the relocation request and modify custody. However, this is quite clearly a request that we reweigh the evidence, which we cannot do. The question on appeal is whether there is evidentiary support for the trial court's judgment, *Baxendale*, 878 N.E.2d at 1257, and we hold that there is. Therefore, the trial court did not

err in granting Hardin's request to relocate and denying Goebel's relocation-based request to modify custody.

[24] Affirmed.

Riley, J., and May, J., concur.