**DBL AXEL, LLC, Appellant–Plaintiff,**

v.

**LASALLE BANK NATIONAL ASSOCIATION, Trustee for Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2006–CIBC14, Commercial Mortgage Pass Through Certificates, Series 2006–CIBC14, Acting by and Through its Special Servicer, Midland Loan Services, Inc., Appellees–Defendants.**

No. 15A01–1003–PL–205.

Court of Appeals of Indiana.

Nov. 4, 2010.

Tonny D. Storey, Sever Storey, LLP, Carmel, IN, Attorney for Appellant.

Ethel H. Badawi, Barnes & Thornburg LLP, Indianapolis, IN, Dawn R. Rosemond, Barnes & Thornburg LLP, Fort Wayne, IN, Attorneys for Appellees.

**OPINION**

BROWN, Judge.

In this interlocutory appeal, DBL Axel, LLC ("DBL") appeals the trial court's Or-

der Directing Immediate Turnover of Funds (the "Order Directing Turnover") in favor of LaSalle Bank National Association, Trustee (the "Trustee") for Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2006–CIBC14, Commercial Mortgage Pass Through Certificates, Series 2006–CIBC14, ("J.P. Morgan") acting by and through its Special Servicer, Midland Loan Services, Inc. ("Midland"). DBL raises one issue, which we revise and restate as whether DBL's constitutional due process rights were violated when the trial court granted the Trustee's motion for turnover of funds and issued its Order Directing Turnover.[1] We affirm and remand.

The relevant facts follow.[2] J.P. Morgan extended a loan (the "Loan") in the original principal amount of $8,840,000 to DBL, and the Loan was secured by a Mortgage and Security Agreement dated January 6, 2006 and recorded January 19, 2006 (the "Mortgage"), in which DBL granted to J.P. Morgan a security interest in certain real property commonly known as Dearborn Plaza in Dearborn County, Lawrenceburg, Indiana (the "Property"). On March 16, 2006, J.P. Morgan assigned the Loan and the Mortgage to Trustee, and the assignment was recorded on September 15, 2006. On March 26, 2008, the City of Lawrenceburg (the "City") filed a Complaint under Cause Number 15C01–0803–PL–007 ("Cause No. 007") for the Appropriation of Real Estate to acquire a portion of the Property and two temporary right-

1. In its appellant's brief, DBL also argues that "[t]he trial court failed to provide due process to DBL under the Indiana Rules of Trial Procedure," and under "the Local Rules of Practice for Dearborn County." Appellant's Brief at 6, 7. However, DBL in its reply brief agrees that Ind. Trial Rule 6(C) and Dearborn County Local Trial Rule 3 do not apply.

2. We note that transcripts of previous hearings in this case were not included in the record on appeal. We will attempt to recite the facts as set forth in the documents contained in the appendices, previous trial court orders, and from otherwise undisputed facts contained in the briefs and other filings.

of-way easements. On August 21, 2008, Midland by counsel sent to DBL a notice of default in connection with the Loan.

On March 6, 2009, DBL and the City entered into a Settlement Agreement and Release (the "Settlement Agreement"). The Settlement Agreement stated that DBL alleged that the City "has performed or caused to be performed actions surrounding [the Property] so as to cause a nuisance ...," and that the parties "agreed to resolve all of their disputes concerning relating [sic] to this nuisance...." Appellees' Appendix at 150. Pursuant to the Settlement Agreement, the City agreed to pay to DBL a sum of $1,725,600 payable in installments of $1,005,600 immediately, $360,000 on or before January 5, 2010, and $360,000 on or before January 5, 2011. The Settlement Agreement also noted that all "claims, rights, demands, or causes of action" which the City or DBL might have against each other were released and discharged other than "that certain Condemnation lawsuit filed by [the City] against DBL ...," under Cause No. 007. *Id.* at 151.

On March 9, 2009, DBL and the City filed an Agreed Findings and Judgment (the "Agreed Judgment") in Cause No. 007 which was signed by the trial court. As part of the Agreed Judgment, the City obtained the portions of the Property and two right-of-way easements it sought and agreed to pay to DBL and Trustee $224,600. However, on March 16, 2009, the clerk of the court "inadvertently issued the cash portion of the Condemnation Proceeds directly to [DBL] instead of to [DBL] and [Trustee] as ordered. ..."

Appellant's Appendix at 13. On April 22, 2009, Trustee sent a letter to DBL demanding, "[p]ursuant to the Mortgage and Loan Documents ... **unconditional and immediate** payment of an amount not less than $224,600.00...." Appellees' Appendix at 305. The letter stated, quoting Section 3.4 of the Mortgage, that "the Trustee has the [ ] 'exclusive power to collect, receive and retain any award or payment for said condemnation or eminent domain and to make any compromise or settlement in connection with such proceeding....'" *Id.* at 304.

On April 30, 2009, DBL filed a Complaint for Declaratory Judgment under Cause Number 15D01–0904–PL–12 ("Cause No. 12"). In its complaint, DBL alleged that "[o]n several occasions, [DBL] has requested from [Trustee] an accounting as to how the Condemnation Proceeds would be applied towards the Mortgage," but that these requests "were rebuffed by [Trustee]." Appellant's Appendix at 13. The complaint stated: "As of this date, [Trustee] has failed to communicate to [DBL] how it intends to calculate the value of said real estate interest and/or how it will be applied to the Mortgage." *Id.* On June 1, 2009, Trustee filed a "Motion For Immediate Appointment Of Receiver and an Answer To [DBL's] Complaint For Declaratory Judgment, Counterclaim And Third–Party Complaint For Conversion, Pre–Judgment Garnishment, Foreclosure And Immediate Appt Of Receiver."[3] *Id.* at 3.

On September 23, 2009, the court held a hearing on the motion for immediate appointment of receiver, and on September

---

**3.** On October 8, 2009, the court granted Trustee's "Verified Motion For Leave To Amend The Counterclaim And Third–Party Complaint W/Exhibit And Trustee's First Amended Counterclaim And Third–Party Complaint For Breach Of Contract, Breach Of Guaranty,

Conversion, Replevin, Forclosure and Appointment Of A Receiver." Appellant's Appendix at 5.

Also, we note that the record does not contain a copy of the motions filed on June 1, 2009 and October 8, 2009.

30, 2009 issued an Order Granting Motion for Receiver and Appointing Receiver (the "Receivership Order") appointing as receiver McKinley, Inc. (the "Receiver"). The court ordered the Receiver:

> [T]o (i) take possession of, manage, maintain, preserve and operate the Property, and to collect the rents, accounts, issues, income and profits thereof; (ii) to administer and/or sell DBL's assets and manage business operations with respect to the Property for the benefit of Trustee and all other creditors[;] and (iii) to apply the same to or otherwise expend funds for the payment of all amounts required in the Receiver's judgment for the operation, maintenance and preservation thereof and to retain the remainder for eventual disposition.... The Receiver is granted all powers necessary and usual in such cases....

*Id.* at 17.[4]

On or about February 24, 2010, the Receiver contacted the Trustee by phone regarding the payments made by the City to DBL pursuant to the Settlement Agreement and "inquired whether the Trustee received any payments from the City related to the Property." *Id.* at 141. The Trustee "indicated that it had not received any payments from the City ...," and the Receiver "then indicated that it had received information that the City may have distributed up to $1,725,600.00 to DBL, all or a portion of which may have been distributed to DBL and accepted by DBL post-receivership." *Id.* The Trustee then phoned Joseph Votaw, counsel for the City, who confirmed that the City and DBL had entered into the Settlement Agreement in March 2009. The Trustee contacted the Dearborn County Clerk, who provided the Trustee with copies of two checks evidencing payment from the City to DBL in the amount of $1,005,600, which was negotiated in March 2009, and $360,000 which was dated January 27, 2010.

On March 17, 2010, the Trustee filed its Verified Motion for an Order to Show Cause and Directing Immediate Turnover of Funds (the "Motion for Turnover").[5] In its Motion for Turnover, the Trustee recit-

---

**4.** In early December 2009, DBL filed a Motion for Relief from Order Dated September 30, 2009 alleging that its counsel did not receive the order because counsel had changed addresses, and although counsel "filed Notice of Change of Law Firm and Address with the Clerk of Dearborn Circuit Court ...," the clerk mailed the order to the improper address. Appellees' Appendix at 27. On December 29, 2009, the Trustee filed a Response in Opposition and argued that "[i]t is an attorney's duty to apprise himself of the status of matters before the court which have been entrusted to his care." *Id.* at 80 (quoting *Int'l Vacuum, Inc. v. Owens,* 439 N.E.2d 188, 190 (Ind.Ct.App.1982)). In mid-January 2010, DBL filed a Verified Amended Motion for Relief from Order Dated September 30, 2009 and argued that "[d]espite DBL having no knowledge of the Receivership Order until October 19, 2009, the Receiver and counsel for Trustee are now requesting compliance with the Receivership Order, and sub-sequently, the return of all monies expended in the normal business transactions taking place between September 30, 2009 and October 19, 2009." *Id.* at 88.

On January 25, 2010, the court granted DBL's motion, thus making the effective date of the Receivership Order October 19, 2009. The court also ordered "all parties to agree on a mediator by January 29, 2010 and mediation to be completed by March 26, 2010 on all pending issues." *Id.* at 120.

**5.** On that same date, the Trustee also filed its Verified Motion to Set Aside Order Requiring Mediation. In its motion, the Trustee argued that it "believes that DBL ... [has] not been forthcoming with the facts of this case ..." and therefore requested that the trial court "s et aside its Order requiring the parties to complete mediation by March 26, 2010." Appellees' Appendix at 126. On March 18, 2010, the court denied the Trustee's motion.

ed facts consistent with the foregoing and argued that:

> DBL is in direct violation of the Mortgage and the Receivership order by, among other things, (i) DBL's continued failure to provide an accurate accounting of DBL's operating funds including the whereabouts of the Installment in the amount of $1,050,600.00 [6] (ii) DBL's failure to disclose and turnover the Installment dated January 27, 2010 from the City to DBL in the amount of $360,000 and (iii) DBL's failure to notify the Receiver of the Settlement Agreement and the amounts collectible thereunder.... DBL's actions ... are in direct violation of, *inter alia,* paragraphs 45, 46, and 52 [of the] Receivership Order and its purpose in preserving the receivership estate.

*Id.* at 144. The Trustee requested in relevant part that the court order DBL to immediately pay to the Receiver the full amount of the two checks paid to it by the City. The Trustee sent to DBL via email a copy of its motion.

The next day, March 18, 2010, the court granted the Motion for Turnover and, in its Order Directing Turnover, ordered that "[w]ithin seven (7) days of this Order, DBL shall pay the full amount of $1,400,600.00 to Receiver in good funds," and also reiterated to both parties "to comply with all terms of the [Receivership] Order...."[7] *Id.* at 161. On March 24, 2010, DBL filed its notice of appeal.

The sole issue is whether DBL's constitutional due process rights were violated when the trial court granted the Trustee's Motion for Turnover and issued its Order Directing Turnover. The question of whether a litigant was denied "a sufficient opportunity to present a defense" is a question of law which we review *de novo. Morton v. Ivacic,* 898 N.E.2d 1196, 1199 (Ind.2008) (citing *Harrison v. Thomas,* 761 N.E.2d 816 (Ind.2002), *reh'g denied* ).

The Fourteenth Amendment of the United States Constitution prohibits any state from depriving a person of life, liberty, or property without due process of law. Also, Article 1, Section 12 of the Indiana Constitution states that "[a]ll courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay." Indiana courts have consistently construed Article 1, Section 12, also known as the due course of law provision, as analogous to the federal due process clause. *See, e.g., Doe v. O'Connor,* 790 N.E.2d 985, 988 (Ind.2003); *see also McIntosh v. Melroe Co.,* 729 N.E.2d 972, 976 (Ind.2000).

■■■ The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. *McKinney v. McKinney,* 820 N.E.2d 682, 687 (Ind.Ct.App.2005) (citing *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972)). "Generally stated, due process requires notice, an opportunity to be heard, and an opportunity to confront witnesses." *Morton,* 898

---

**6.** The Trustee acknowledges in its brief that the $1,050,600 amount was a misstatement and that the true amount DBL received pursuant to the Settlement Agreement in March 2009 was $1,005,600.

**7.** As mentioned above, the two checks paid by the City to DBL were in the amounts of $1,005,600 and $360,000, for a total of $ 1,365,600. Thus, it is unclear how the trial court arrived at the amount of $1,400,600 in its Order Directing Turnover.

N.E.2d at 1199 (quoting *Ind. State Bd. of Educ. v. Brownsburg Cmty. Sch. Corp.*, 842 N.E.2d 885, 889 (Ind.Ct.App.2006)). "The 'opportunity to be heard' is a fundamental requirement of due process." *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). "[T]his principle includes 'an opportunity to present every available defense.'" *Id.* (quoting *Lindsey v. Normet*, 405 U.S. 56, 66, 92 S.Ct. 862, 870, 31 L.Ed.2d 36 (1972)). "[I]t is irrelevant that no legitimate defense may be available," and "[a] 'defendant' must be allowed the opportunity to present whatever defense he judges worthy." *Anderson Federal Sav. and Loan Ass'n v. Guardianship of Davidson*, 173 Ind.App. 549, 557, 364 N.E.2d 781, 785 (1977).

■ "A due process claim requires the consideration of two factors: first, there must be the deprivation of a constitutionally protected property or liberty interest; and second, a determination of what procedural safeguards are then required." *Ross v. Ind. State Bd. of Nursing*, 790 N.E.2d 110, 120 (Ind.Ct.App. 2003). "The United States Supreme Court has defined constitutionally protected 'property' in this context as 'a legitimate claim of entitlement.'" *Bankhead v. Walker*, 846 N.E.2d 1048, 1053 (Ind.Ct. App.2006). "The source of such entitlements is not to be found in the Constitution, but generally arises from a statute, ordinance, or contract." *Id.* Settlement agreements are governed by contract law and may be considered contracts for due process purposes. *See Ind. State Highway Comm'n v. Curtis*, 704 N.E.2d 1015, 1018 (Ind.1998); *see also Speckman v. City of Indianapolis*, 540 N.E.2d 1189, 1192–1193 (Ind.1989) (holding that a settlement agreement was considered a contract for due process purposes and plaintiff possessed a valid claim that due process rights were violated). "When protected property interests are implicated, the right to some kind of prior hearing is paramount." *Charnas v. Estate of Loizos*, 822 N.E.2d 181, 185 (Ind.Ct.App.2005) (citing *Roth*, 408 U.S. at 569–570, 92 S.Ct. at 2705). "In determining whether due process requirements apply, courts look not to the weight but to the nature of the interest at stake." *Id.* (citing *Roth*, 408 at 571, 92 S.Ct. at 2706).

DBL argues that "[t]he one-day turnaround of the Trustee's motion violated DBL's procedural due process rights under the Indiana Constitution." Appellant's Brief at 3. DBL argues that it "has a protectable property interest in the proceeds from the Settlement Agreement and a procedural right to be heard regarding that interest," and that "because of the trial court's hasty ruling, DBL had neither a hearing nor an opportunity to file a responsive brief." *Id.* at 2. DBL argues that "[a] protectable property interest sufficient to invoke due process protection may arise from a contract" and that "[t]he March 2009 Settlement Agreement between DBL and the City functions as a contract." *Id.* at 5.

The Trustee argues that "[t]here is nothing in [Article 1, Section 12] of the Indiana Constitution obligating the trial court to hold a hearing prior to the entry of an order for the payment of money to an officer of the court." Appellees' Brief at 8. The Trustee argues that DBL's argument that it "had no opportunity to respond" is erroneous because "[a] courtesy copy of the Trustee's Motion for Turnover was provided to DBL ... the day it was filed." *Id.* The Trustee argues that "DBL had seven (7) days to comply" with the Motion for Turnover, and "[i]f DBL's due process rights were violated, DBL had the opportunity to file a motion to stay or otherwise object to the trial court's Order...." *Id.* at 9. The Trustee argues that "DBL's alleged due process rights were

not violated by the trial court's Order Directing Turnover because the very obligation to turnover the funds were agreed to by DBL in the Mortgage" because "the money paid (and to be paid) to DBL under the Settlement Agreement constitute 'Condemnation Awards' in the Mortgage." *Id.* at 12–13.

The Trustee further argues that "the Order Directing Turnover does not deprive DBL of its property right because [it] merely directs DBL to turnover the Payments to the Receiver, an officer of the trial court." *Id.* at 14. The Trustee argues that "[t]he Receivership Order explicitly outlined DBL's obligations to turnover all current and future income, as well as all of the books and records of DBL to the Receiver," but that "[i]nstead of complying ... DBL exacted its own relief by its blatant failure to disclose the Settlement Agreement and Payments to the Receiver, the trial court and/or Trustee." *Id.* at 14–15. The Trustee argues that "DBL will have a further opportunity to object to the distributions" and thus the order "is not an ultimate adjudication of the rights to the Payments." *Id.* at 15. Also, the Trustee argues that "the Receiver is an agent of DBL and ... the Order Directing Turnover merely ensures that the Receiver ... has possession and control of the Payments for the benefit of the receivership estate." *Id.* Finally, the Trustee argues that DBL has had "opportunities at the September 23, 2009 hearing and the January 22, 2010 hearing to present its defenses to the Receivership Order's requirements that DBL turnover all current and future income...." [8] *Id.* at 16.

DBL argues in its reply brief that the Trustee's arguments that "the nuisance damages constitute condemnation awards" and that the court's order requiring DBL to turn over the payments by the City to the Receiver would not violate DBL's property interest are "fact-based," and therefore the Trustee "essentially concedes that DBL does in fact have a property interest at stake." Appellant's Reply Brief at 4. DBL also argues that the Trustee's argument that "DBL has been allowed to present defenses on three prior occasions" is erroneous because those hearings were "wholly unrelated to this particular Motion Directing Turnover and so do not constitute an opportunity to be heard on this matter." *Id.* at 4–5.

█ We initially note that this court has previously stated that a court order appointing a receiver to take control of a debtor's property merely authorizes the receiver "to retain custody and use of the property pending an adjudication of any adverse claims." *Bowlby v. NBD Bank,* 640 N.E.2d 1095, 1098 (Ind.Ct.App.1994); *see also Polk v. Johnson,* 76 N.E. 634, 634–635 (Ind.App.1906) ("The appointment of a receiver effects no change in the title to the property involved. He does not, as a general rule, take a legal title thereto. He is a mere custodian pending the litigation, and his possession the possession of the court which appoints him."). [9] In the Motion for Turnover, the Trustee alleged that "DBL's actions from the entry of the Receivership Order ... are in direct violation of, *inter alia,* paragraphs 45, 46 and 52 [of the] Receivership Order and its purpose in

---

8. The Trustee also argues that "[e]ven if this Court determines that DBL's property rights were somehow deprived by the Order Directing Turnover ... a hearing was held by the trial court on June 17, 2010." Appellees' Brief at 15. We note, however, that this alleged hearing was held almost three months after DBL filed its notice of appeal and that,

although the record on appeal contains an order dated June 8, 2010 setting a date for the hearing, there is no record of the proceedings.

9. It appears that this case does not appear in the Indiana Appellate Reports.

preserving the receivership estate." Appellees' Appendix at 144. Paragraphs 45, 46, and 52 of the Receivership Order provide:

45. The Receiver is authorized, *without further leave of Court,* to take and keep possession of the Property, receive rents and profits, and collect debts, in the Receiver's own name, and generally do other acts with respect to the property under Indiana Code § 32–30–5–7.[10]

46. DBL, its agents, and employees shall turn over to the Receiver, within five (5) business days from the date and time of the entry of this Order ... any and all records and information they may have concerning the Property including, without limitation, all books, records, correspondence, and other information related to (a) any leases and other agreements to which the Property is or may be subject, (b) any amounts received from the tenants of the Property, (c) all accounts payable and accounts receivable pertaining to the Property, (d) all accounts at financial institutions for income related to the Property, (e) all liens or other encumbrances on the Property, (f) property taxes, (g) insurance of all types, including liability related to the Property, (h) 2005, 2006, 2007, and 2008 operating statements, (i) copies of all maintenance and service contracts, (j) all insurance loss histories and/or claims on the Property, (k) all capital expenditure projects, and (l) all other aspects of DBL's records that are or may be necessary or pertinent to the Receiver's operation and management of the Property.

\* \* \* \* \* \*

52. DBL, its agents, and employees shall turn over to the Receiver, immediately upon Receiver's Qualification ... *all sums in existence on the date hereof that are related or pertain to, or are derived from the Property* including, but not limited to, (a) all cash in hand, (b) all cash equivalents and negotiable instruments ... and (c) all sums held in accounts in any financial institutions including, without limitation, (i) tenant/lessee/buyer security deposits or earnest monies, (ii) deposits held in escrow for any purpose, such as for payment of real estate taxes and insurance premiums, (iii) proceeds of insurance maintained for, or pertaining to, the Property, (iv) rent or prepaid rent, (v) reserves or other funds designated or intended for capital improvement, maintenance, repair or occupancy of all or any portion of the Property.

*Id.* at 20–22 (emphasis added).

We address the question of whether, as a matter of law, the payments made by the City to DBL pursuant to the Settlement Agreement are within the scope of the Receivership Order. "The purpose of interlocutory orders appointing receivers ... is to preserve the status, or to protect property pending a disposition of the main action upon its merits." *Vogel v. Chappell,* 211 Ind. 310, 312–313, 6 N.E.2d 953, 955 (1937). "A receiver has statutory authority to take and keep possession of the property which belongs to the debtor over whose property he is the receiver, which constitutes the subject matter of the litigation, and which is within the jurisdiction of the court." *McCollum*

---

**10.** Ind.Code § 32–30–5–7 states:

The receiver may, under control of the court or the judge:
  (1) bring and defend actions;
  (2) take and keep possession of the property;
  (3) receive rents;
  (4) collect debts; and
  (5) sell property;
in the receiver's own name, and generally do other acts respecting the property as the court or judge may authorize.

*v. Malcomson,* 171 Ind.App. 527, 531, 358 N.E.2d 177, 179 (1976) (quotations omitted); *see also State ex rel. Pancol v. Cleveland,* 241 Ind. 206, 211, 171 N.E.2d 255, 257 (1961) ("[A] receiver ordinarily takes all the property of the debtor which constitutes the subject of the action and is within the jurisdiction of the court, but he does not take property not involved in the action or not included in an order designating the particular property of which the receiver is to have charge.").

■■  The construction of a settlement agreement is governed by contract law and is generally a question of law for the court. *See N. Ind. Pub. Serv. Co. v. U.S. Steel Corp.,* 907 N.E.2d 1012, 1017 (Ind.2009). By the Settlement Agreement's very terms, it concerned "certain real estate in the City of Lawrenceburg in Dearborn County ... referred to as 'Dearborn Plaza,'" in which DBL alleged that the City "has performed or caused to be performed actions surrounding Dearborn Plaza so as to cause a nuisance to Dearborn Plaza...." Appellees' Appendix at 150. The nuisance damages stemmed from an "injury or [ ] decrease in the value of the Property," which is considered a condemnation award under Section 1.1(f) of the Mortgage, and which under Section 3.4 the Trustee maintains the "exclusive power to collect, receive and retain" such "awards or payments."[11] Appellant's Appendix at 23, 34. We therefore agree with the Trustee that the checks paid by the City to DBL concerned the Property and were within the scope of and subject to the Receivership Order, and DBL's failure to include the monies paid or otherwise notify the Receiver of the Settlement Agreement was a violation of that order.

■■■  The Order Directing Turnover merely ordered DBL's compliance with the court's previous order, the Receivership Order. Trial courts possess "inherent and equitable powers ... to see that its own judgments and orders are enforced...." *Kaghann's Korner, Inc. v. Brown & Sons Fuel Co., Inc.,* 706 N.E.2d 556, 564 (Ind. Ct.App.1999), *clarified on reh'g,* 711 N.E.2d 1286 (Ind.Ct.App.1999); *see also Bitner v. Hull,* 695 N.E.2d 181, 183 (Ind. Ct.App.1998) ("Wife was awarded both the thrift equity and the RSR thrift equity fund money, yet none of it had been turned over to her.... Unless the court took action, its decree would not be heeded. Thus ... the trial court exercised its inherent power to make such orders as were necessary to enforce its prior decree."). To the extent that DBL argues that it was deprived of due process because it was not given an opportunity to be heard, we observe that a hearing was held on September 23, 2009 on the Trustee's motion for immediate appointment of receiver and, as previously mentioned, the Order Directing Turnover merely ordered DBL to comply with the Receivership Order.

For the foregoing reasons, we remand for the sole purpose that the trial court amend its Order Directing Immediate Turnover of Funds and enter an order directing turnover, consistent with note 7 of this opinion, in the amount of $1,365,600 rather than the previously ordered amount of $1,400,600, and we affirm in all other respects.

Affirmed and remanded.

DARDEN, J., and BRADFORD, J., concur.

---

11.  DBL concedes that the nuisance damages paid by the City to DBL pursuant to the Settlement Agreement constitute "condemnation proceeds." Appellant's Appendix at 113 n.1.