946 N.E.2d 1173 (2011)
DBL AXEL, LLC, Appellant-Plaintiff,
v.
LaSALLE BANK NATIONAL ASSOCIATION, Trustee for Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2006-CIBC14, Commercial Mortgage Pass Through Certificates, Series 2006-CIBC14, Acting by and Through its Special Servicer, Midland Loan Services, Inc., Appellees-Defendants.
No. 15A01-1003-PL-205.
Court of Appeals of Indiana.
February 14, 2011.
Stephen J. Peters, Rory O'Bryan, David I. Rubin, Harrison & Moberly, LLP, Indianapolis, IN, Attorneys for Appellant.
Ethel H. Badawi, Barnes & Thornburg LLP, Indianapolis, IN, Dawn R. Rosemond, Barnes & Thornburg LLP, Fort Wayne, IN, Attorneys for Appellees.

OPINION ON REHEARING
BROWN, Judge.
DBL Axel, LLC ("DBL"), by new counsel, petitions for rehearing following our affirmance of the trial court's Order Directing Immediate Turnover of Funds (the "Order Directing Turnover") in favor of LaSalle Bank National Association, Trustee (the "Trustee") for Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2006-CIBC14, Commercial Mortgage Pass Through Certificates, Series 2006-CIBC14, acting by and through its Special Servicer, Midland Loan Services, Inc, pursuant to a Settlement Agreement and Release (the "Settlement Agreement") entered into between DBL *1174 and the City of Lawrenceburg (the "City"). DBL raises three issues, one of which we find dispositive and revise and restate as whether the trial court's Order Directing Turnover violated DBL's due process rights to the extent that it had not been determined whether DBL was still in possession of the funds at the time the trial court issued its order.[1] We vacate our original opinion, reverse, and remand.
A detailed recitation of the underlying facts and procedural history appears in our original opinion, DBL Axel, LLC v. LaSalle Bank Nat'l Ass'n, 936 N.E.2d 326 (Ind.Ct.App.2010). Summarily, DBL received a loan which was secured by a Mortgage and Security Agreement (the "Mortgage") in certain real property in Dearborn County commonly known as Dearborn Plaza in Lawrenceburg, Indiana (the "Property"), which was eventually assigned to the Trustee. In March 2008, the City filed a Complaint for the Appropriation of Real Estate to acquire a portion of the Property and two temporary right-of-way easements. DBL defaulted on the loan in August 2008.
On March 6, 2009, DBL and the City entered into the Settlement Agreement in which the City agreed to pay DBL $1,725,600 in installments of $1,005,600 immediately, $360,000 on or before January 5, 2010, and $360,000 on or before January 5, 2011, as nuisance damages. On March 9, 2009, DBL and the City filed Agreed Findings and Judgment (the "Agreed Judgment") on the City's Complaint for the Appropriation of Real Estate, and the City obtained the portions of the Property and easements it sought and agreed to pay $224,600 to DBL and the Trustee. Also in March 2009, DBL negotiated a check from the City for $1,005,600. On April 30, 2009, DBL filed a complaint requesting a declaratory judgment as to how the $224,600 would be applied to its mortgage, and on June 1, 2009, the Trustee filed a "Motion For Immediate Appointment Of Receiver. . . ." Appellant's Appendix at 3.
The trial court held a hearing on the Trustee's motion, and on September 30, 2009 issued an Order Granting Motion for Receiver and Appointing Receiver (the "Receivership Order") appointing McKinley, Inc. (the "Receiver") effective as of October 19, 2009. The court ordered the Receiver:
[T]o (i) take possession of, manage, maintain, preserve and operate the Property, and to collect the rents, accounts, issues, income and profits thereof; (ii) to administer and/or sell DBL's assets and manage business operations with respect to the Property for the *1175 benefit of Trustee and all other creditors[;] and (iii) to apply the same to or otherwise expend funds for the payment of all amounts required in the Receiver's judgment for the operation, maintenance and preservation thereof and to retain the remainder for eventual disposition.. . . The Receiver is granted all powers necessary and usual in such cases. . . .
Id. at 17. On January 27, 2010, DBL received the first $360,000 installment from the City.
In February 2010, the Receiver made the Trustee aware of the Settlement Agreement, and the Trustee obtained copies from the Dearborn County Clerk of the $1,005,600 and $360,000 checks paid by the City to DBL. On March 17, 2010, the Trustee filed its Verified Motion for an Order to Show Cause and Directing Immediate Turnover of Funds (the "Motion for Turnover") arguing that DBL violated the Mortgage and the Receivership order by failing to: (i) provide an accurate accounting of DBL's operating funds related to the whereabouts of $1,005,600; (ii) disclose and turn over the $360,000 installment; and (iii) notify the Receiver of the Settlement Agreement, and requesting that DBL immediately pay to the Receiver the full amount of the two checks. The next day, March 18, 2010, the court granted the Trustee's Motion for Turnover and, in its Order Directing Turnover, ordered that DBL pay $1,400,600 to the Receiver within seven days and to comply with all terms of the Receivership Order.
On March 24, 2010, DBL filed its notice of appeal. On appeal, DBL argued that it "has a protectable property interest in the proceeds from the Settlement Agreement and a procedural right to be heard regarding that interest," and that "because of the trial court's hasty ruling, DBL had neither a hearing nor an opportunity to file a responsive brief." Appellant's Brief at 2. DBL argued that "[t]he March 2009 Settlement Agreement between DBL and the City functions as a contract," which constitutes a "protectable property interest sufficient to invoke due process protection." Id. at 5. At no point did DBL mention or make argument that it did not have possession of the monies paid.
We held that the Settlement Agreement funds and documentation of DBL receiving the funds from the City were within the scope of the Receivership Order, which ordered DBL to turn over to the Receiver "any and all records and information they may have concerning the Property . . ." as well as "all sums in existence on the date hereof that are related or pertain to, or are derived from the Property. . . ." DBL Axel, 936 N.E.2d at 334. In so holding, we noted that an order appointing a receiver "merely authorizes the receiver `to retain custody and use of the property pending an adjudication of any adverse claims,'" and that "title to the property involved" remains unchanged. Id. at 333 (quoting Bowlby v. NBD Bank, 640 N.E.2d 1095, 1098 (Ind.Ct.App.1994); Polk v. Johnson, 76 N.E. 634, 634-635 (Ind.App.1906)).
On December 6, 2010, DBL timely filed its petition for rehearing. On rehearing DBL, by new counsel, argues that the Receivership Order only "applies to monies or property `in existence on the date [of the Receivership Order]' or held in accounts of DBL in any financial institution on that date," but that "the March 2009 Payment no longer existed as cash or property owned or held by DBL when the Receivership Order became effective." DBL's Petition at 3-4. DBL directs our attention to a post-appeal filing with the trial court titled DBL's Motion to Stay the Order Directing Turnover and DBL's Response to Motion for an Order to Show Cause why DBL Should Not Be Held in Contempt and Sanctioned, certified served on May 7, 2010, in which DBL alleged *1176 regarding the $1,005,600 that it "immediately dispersed [sic] the funds and was no longer in possession of said funds at the time of the appointment of the Receiver." Id. at 4 (citing Appellant's Appendix at 112) (emphasis in Petition).
The dispositive issue is whether the trial court's Order Directing Turnover violated DBL's due process rights to the extent that it had not been determined whether DBL was still in possession of the funds at the time the trial court issued its order. Whether a litigant was denied "a sufficient opportunity to present a defense" is a question of law which we review de novo. Morton v. Ivacic, 898 N.E.2d 1196, 1199 (Ind.2008) (citing Harrison v. Thomas, 761 N.E.2d 816 (Ind.2002), reh'g denied). As noted above, DBL did not argue on appeal that it was not in possession of the funds paid under the Settlement Agreement. Indeed, the tenor of DBL's arguments suggested otherwise, and we are puzzled why such argument was not made. Ordinarily, we do not permit parties to raise arguments in petitions for rehearing that were not raised in the original briefs; however, here, we are compelled by notions of fundamental fairness to revisit the issue and grant DBL's petition.[2]See Jallali v. Nat. Bd. of Osteopathic Medical Exam'rs, Inc., 908 N.E.2d 1168, 1172 (Ind.Ct.App.2009), trans. denied.
As noted by DBL, the case of McCollum v. Malcomson, 171 Ind.App. 527, 358 N.E.2d 177 (1976), makes clear that where a debtor distributes funds to third persons prior to the time the receivership is established, a court or receiver cannot compel the third persons, without due process of law, to turn over such funds to the receiver. In McCollum, the Malcomsons paid McCollum $25,000 as a down payment pursuant to a contract for the sale of a residence. 171 Ind.App. at 528, 358 N.E.2d at 178. About a year later, McKeehan and other plaintiffs[3] brought an action in which the Malcomsons and their corporation Abacus were put into receivership. Id. at 528-529, 358 N.E.2d at 178-179. On May 29, 1974, the trial court ordered McCollum, a non-party, to pay to the receiver the $25,000. Id. at 529-530, 358 N.E.2d at 179. This court held that "[t]he trial court erred in utilizing a summary proceeding with respect to [a non-party] and the $25,000," noting that "the appointment of the receiver in the instant cause did not give him the power to summarily seize possession of the $25,000 inasmuch as these funds were not in the hands of Abacus or the Malcomsons at the *1177 time of the appointment." Id. at 531, 358 N.E.2d at 179-180. The case went on to outline the procedures by which a receiver could "acquire property in the possession of a stranger to the litigation. . . ." Id. at 532, 358 N.E.2d at 180.
Similarly here, if the $1,005,600 paid to DBL in March 2009 had been distributed to third persons, the Receiver, in attempting to acquire such funds, would first have to "amend the complaint to make that outsider a party or . . . proceed against the outsider by ordinary civil action." Id. Incident to and underlying this procedure, however, we hold that, where in question, the court must first make a factual determination as to the whereabouts of the property. In so holding, we point out that it appears from the record that DBL has concealed the whereabouts of not only the $1,005,600 by not including it in any record which was ordered to be turned over to the Receiver, but also the $360,000 paid to DBL after the date of the Receivership Order. Indeed, neither this installment nor the existence of the Settlement Agreement was disclosed to the Receiver.[4] Nevertheless, we believe that these questions are best left to the trial court to resolve by way of a factfinding hearing and any other procedures which may be necessary.
For the foregoing reasons, we grant rehearing and vacate our original opinion in this matter, reverse the trial court's Order Directing Turnover, and remand for further proceedings.
Reversed and remanded.
DARDEN, J., and BRADFORD, J., concur.
NOTES
[1] DBL raises two other issues: 1) whether the determination that "the nuisance damages paid to DBL constituted `condemnation proceeds'" was a contested factual issue; and 2) whether "the trial court improperly issued the Post-Appeal Order prior to certification of this Court's Opinion . . ." in violation of Ind. Appellate Rule 65(E). DBL's Petition at 1. Regarding the latter issue, we issued an order on January 13, 2011 vacating the trial court's November 4, 2010 order. January 13, 2011 Order (citing Ind. Appellate Rule 65(E)). Additionally, Dave Richman and Lynette Gridley, as trustees of the Hartunian Family Trust, bring a petition of interested parties for rehearing and clarification of published opinion asking that this court "reconsider and clarify or vacate that portion of its published decision concluding that nuisance payments, made to [DBL] pursuant to a Settlement Agreement with the City of Lawrenceburg for [DBL's] alleged lost business profits . . . were a `condemnation award' under the mortgage" and incorporate by reference DBL's arguments. Hartunian Family Trust Petition at 1-2.

With regard to the parties' argument about the classification of the damages paid pursuant to the Settlement Agreement, because we vacate our original opinion, we need not address the issue. We note that on remand, however, the trial court should conduct a factual inquiry to the extent necessary.
[2] The Indiana Supreme Court has noted:

"[F]or all its consequence, `due process' has never been, and perhaps can never be, precisely defined." Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 24, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). As the United States Supreme Court has observed, unlike some other legal rules, due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." Id. at 24, 101 S.Ct. 2153 (quoting Cafeteria Workers v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961)). Instead, "the phrase expresses the requirement of `fundamental fairness,' a requirement whose meaning can be as opaque as its importance is lofty." Lassiter, 452 U.S. at 24, 101 S.Ct. 2153. Accordingly, "[a]pplying the Due Process Clause is [] an uncertain enterprise which must discover what `fundamental fairness' consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake." Id. at 24-25, 101 S.Ct. 2153.
State v. Davis, 898 N.E.2d 281, 287 (Ind. 2008).
[3] This court observed that the cause "should properly be captioned Robert D. McKeehan et al. v. Donald J. Malcomson et al.," and that it "used the caption under which the parties filed this appeal in order to simplify the keeping of records in this court." McCollum, 171 Ind.App. at 527 n. 1, 358 N.E.2d at 177 n. 1. McCollum was not a plaintiff to the cause.
[4] We note that, in its post-appeal filing served on May 7, 2010, and cited by DBL in its petition, DBL alleged that the Receiver is not entitled to the $360,000 paid to DBL on or before January 5, 2010 based on the terms of the Receivership Order.