# FOR PUBLICATION



FILED
Aug 15 2013, 5:34 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JEFFREY A. FLORES**
Flores Law Office
Madison, Indiana

ATTORNEY FOR APPELLEE:

**R. PATRICK MAGRATH**
Alcorn Goering & Sage, LLP
Madison, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA


CHARLES KIETZMAN,                 )
                                  )
        Appellant,                )
                                  )
        vs.                       )   No.  39A01-1301-DR-14
                                  )
AMANDA S. KIETZMAN,               )
                                  )
        Appellee.                 )


APPEAL FROM THE JEFFERSON CIRCUIT COURT
The Honorable Ted R. Todd, Judge
Cause No. 39C01-0911-DR-705


**August 15, 2013**

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

C.K. ("Father") appeals the dissolution court's order, which granted A.L.'s ("Mother") motion to relocate with their child, K.K., to China for three years and modified custody to make Mother sole custodian of K.K.

We affirm.

**Issues**

Father raises two issues for our review, which we consolidate and restate as whether the dissolution court abused its discretion when it granted Mother's petition to relocate to China with K.K. and denied Father's motion to modify custody.

**Facts and Procedural History**

Father and Mother were married; the union resulted in the birth of one child, K.K. Father and Mother were divorced in 2010. Mother had a child, B.L., and later married B.L.'s father ("Stepfather"). Before and after the dissolution of the marriage to Mother, Father was employed and earned between $50,000 and $65,000 per year, and provided insurance and other benefits for K.K. After the dissolution of the marriage, Mother and Father shared physical and legal custody of K.K.

Stepfather is an engineer employed by a large chemical manufacturer. In October 2012, Stepfather's employer offered him a position in a factory in China, where he would work for three years to train local personnel. The family would live in a special compound populated by employees of large international businesses with operations in China. If she moved to China with Mother, Stepfather, and B.L., K.K., who was nine years old during

2

October 2013, would attend a special international school in China. The family would be able to return to the United States twice per year for three or four weeks at a time.

At around this time, K.K.'s grades in school began to suffer, and on December 27, 2012, she was diagnosed with Attention Deficit Disorder, inattentive subtype ("ADD"). Mother and Father, who shared custody, did not agree on whether K.K. should be placed on medication for her ADD diagnosis.

On October 23, 2012, Mother filed her motion seeking the dissolution court's permission to relocate to China with K.K. Shortly afterward, Father left his employment after selling some farmland; Father planned to live off the proceeds of the sale for several years while he worked part time and studied to become an Emergency Medical Technician ("EMT"), and did not seek to reduce or otherwise modify his child support obligations for K.K.

A Guardian Ad Litem, Pamela Moon ("Moon"), was appointed to represent K.K.'s interests during the proceedings. Moon interviewed K.K. at both Mother's and Father's residences, and interviewed Mother, Father, and Stepfather. Moon ultimately concluded that it was in K.K.'s best interests to go to China with Mother and Stepfather, with ample parenting time afforded to Father.

On January 3, 2013, a hearing was conducted, during which Mother, Father, Stepfather, Moon, and Father's sister testified concerning Mother's planned relocation. Dr. Holly Robinson ("Dr. Robinson"), K.K.'s pediatrician, also testified, and portions of K.K.'s medical and school records were also entered into evidence. On January 7, 2013, the

3

dissolution court entered its order and found that it was in K.K.'s best interests to relocate to China with Mother. The court ordered that Father have three periods of parenting time with K.K. per year; two of these would fall when K.K. was back in the United States with the rest of the family, and one would permit Father to visit K.K. in China. The court further ordered that both parents be afforded liberal access to K.K. via telephone, Skype, and other forms of communication. Finally, the trial court ordered that sole custody of K.K. would rest with Mother so that medical and other decisions could be made quickly while K.K. was in China.

On January 10, 2013, Father filed his notice of appeal. On January 17, 2013, Father filed a motion to stay the dissolution court's order due to Mother and Stepfather learning of a cultural adaptation "quarantine" period imposed by Stepfather's employer. The quarantine period was expected to affect Father's planned summer parenting time under the order. The dissolution court conducted a hearing on Father's motion on January 23, 2013, and denied the motion the same day.

On February 8, 2013, Father filed a motion to stay with this Court, seeking an emergency stay of the dissolution court's order pending appeal. On February 22, 2013, this Court denied Father's emergency stay. This appeal ensued.

**Discussion and Decision**

Father appeals the dissolution court's order granting Mother's request to relocate with K.K., granting Mother sole custody of K.K., and denying his own request for modification of custody of K.K. The dissolution court entered findings and conclusions in reaching its decision. Our review of findings and conclusions in such cases is well settled:

4

> Pursuant to Indiana Trial Rule 52(A), we do not "set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses." Where, as here, the findings and conclusions are entered sua sponte, "the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the trial court has not found, and we may affirm a general judgment on any theory supported by the evidence adduced at trial." Sexton v. Sedlak, 946 N.E.2d 1177, 1183 (Ind. Ct. App. 2011), trans. denied.

Miller v. Carpenter, 965 N.E.2d 104, 108-09 (Ind. Ct. App. 2012).

Moreover, we review custody modifications for an abuse of discretion. In re Paternity of J.J., 911 N.E.2d 725, 728 (Ind. Ct. App. 2009), trans. denied. The Indiana Supreme Court "has expressed a preference for granting latitude and deference to our trial judges in family law matters … because of trial judges' unique, direct interactions with the parties face-to-face." T.L. v. J.L., 950 N.E.2d 779, 784 (Ind. Ct. App. 2011) (citations and quotations omitted). Therefore, we do not substitute our judgment for that of the trial court if evidence and legitimate inferences therefrom support the trial court's judgment; this serves the interests of finality in custody matters. Baxendale v. Raich, 878 N.E.2d 1252, 1257-58 (Ind. 2008).

A parent who wishes to relocate with a child who is the subject of an existing custody order must file a motion with the court that issued the order for custody or parenting time. Ind. Code § 31-17-2.2-1(a)(1). Upon motion, the court must set the matter for a hearing to review and, as appropriate, modify parenting time, custody, or other orders. I.C. § 31-17-2.2-1(b). A parent who wishes to oppose the relocation must file a motion seeking to prevent the relocation of the child within sixty days after receiving notice of the planned relocation. I.C.

5

§ 31-17-2.2-5(a). A parent who plans to relocate with the child must bear the burden of proof to show "that the proposed relocation is made in good faith and for a legitimate reason." I.C. § 31-17-2.2-5(c). If the relocating party meets its burden, the burden of proof shifts to the nonrelocating parent to show that the relocation is not in the best interests of the child. I.C. § 31-17-2.2-5(d).

When reaching a decision on a proposed relocation, the trial court must take into account the following factors:

(1) The distance involved in the proposed change of residence.

(2) The hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation.

(3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties.

(4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.

(5) The reasons provided by the:

(A) relocating individual for seeking relocation; and

(B) nonrelocating parent for opposing the relocation of the child.

(6) Other factors affecting the best interest of the child.

I.C. § 31-17-2.2-1(b).

"Other factors affecting the best interest of the child," id., are the factors provided by our legislature in the Indiana Code, and include:

(1) The age and sex of the child.

6

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

    (A) the child's parent or parents;

    (B) the child's sibling; and

    (C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

    (A) home;

    (B) school; and

    (C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

I.C. § 31-17-2-8.

Our supreme court has held that, even where there has not been a substantial change in one or more of the statutory factors affecting the best interests of the child set forth in Section 31-17-2-8, a change in custody may be ordered due to relocation of a parent. In re Paternity of J.J., 911 N.E.2d at 729 (citing Baxendale, 878 N.E.2d at 1256-57). A trial court must, however, consider all of the statutory factors enumerated in the relocation statute codified at Subsection 31-17-2.2-1(b). Id. at 731. Moreover, "[o]n appeal it is not enough that the

7

evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal." Kirk v. Kirk, 770 N.E.2d 304, 307 (Ind. 2002) (citations and quotation marks omitted).

Here, the dissolution court found that Mother's relocation was in good faith and for legitimate reasons, and that relocation of K.K. with Mother, Stepfather, and B.L. to China for three years was in K.K.'s best interests. Father argues that this decision amounted to an abuse of discretion.

We do not agree. Our review of the dissolution court's order reveals that the court considered the statutory factors and recognized the distance involved in a move to China, the duration of time K.K. would be gone, the need to preserve K.K.'s relationship with Father, the reasons for the move, and the good faith of both parents in their parenting and desires for K.K. The court recognized that Father's opposition to the relocation was "understandabl[e]," (App'x at 10) but found that the parental relationship between K.K. and Father could be preserved through the use of telecommunications and Father's exclusive parenting time during return visits to the United States. The court further found that the relocation Mother proposed would be in K.K.'s best interests as an educational and cultural experience for her, and that despite K.K.'s recent diagnosis of ADD, the evidence presented to the court indicated that K.K. could readily adjust to the changes associated with a move to China and would likely thrive there. These findings have support in the record, including testimony from Dr. Robinson and Moon. Moreover, Mother was expected to be readily able to provide

support to aid K.K.'s transition to China because Mother planned to become an at-home parent for much of the duration of the stay in China.

Much of Father's argument urges us to reweigh evidence or otherwise second-guess the dissolution court's weighing of the statutory factors; we cannot do so. Kirk, 770 N.E.2d at 307. Indeed, parts of Father's argument would apply equally well to Mother if the dissolution court had denied Mother's motion to relocate with K.K.: K.K. would be separated from one set of family members instead of another, Mother would miss parenting time, and Mother and K.K. would be the same distance and number of hours apart. Thus, we find no error in the court's consideration of the matter and in reaching a clearly difficult decision. We therefore affirm the decision of the dissolution court granting Mother's motion to relocate with K.K. to China, subject to the provisions for parenting time set forth in the order.[1]

Similarly, we disagree with Father's contention that the dissolution court failed to take into account the statutory factors associated with a custody modification under Indiana law. First, to the extent the statutory factors for modification of custody that form the best interest of the child test are incorporated into the requirements for considering a parent's petition to relocate with a child, we have already determined that the dissolution court addressed these matters. Second, to the extent Father asks that we consider Father's questions concerning Moon's opinion, the general uncertainty of the future, the presence of family ties in Indiana,

---

[1] Father's motions for an emergency stay sought to prevent K.K.'s relocation as a result of a six-month "quarantine" period that would affect K.K.'s ability to travel to the United States during Father's scheduled parenting time in the summer of 2013. Father does not now argue that either the dissolution court or this Court erred in denying his motions. Thus we do not address any issues concerning the quarantine's interference in his parenting time, and leave resolution of such disputes to the sound discretion of the dissolution court.

and Father's suggestion that the ADD diagnosis is in fact merely anxiety about moving to China, these amount again to a request that we reweigh evidence.

We cannot do so, and we accordingly affirm the dissolution court's order denying Father's motion to modify custody.

## Conclusion

We find no abuse of discretion in the dissolution court's decision to grant Mother's request to relocate with K.K. Nor do we find any abuse of discretion in the dissolution court's decision to deny Father's request to modify custody. We accordingly affirm the decision of the dissolution court.

Affirmed.

MAY, J., and BRADFORD, J., concur.