**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DAVID P. MURPHY**
David P. Murphy & Associates, P.C.
Greenfield, Indiana

ATTORNEY FOR APPELLEE:

**MATTHEW C. MOORE**
Fechtman Law Firm
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

PAMELA J. (McCONNELL) NEAL,    )
    )
    Appellant-Petitioner,    )
    )
    vs.    )    No. 33A01-1305-DR-202
    )
DAVID A. McCONNELL,    )
    )
    Appellee-Respondent.    )

APPEAL FROM THE HENRY CIRCUIT COURT
The Honorable Nick Barry, Special Judge
Cause No. 33C01-0809-DR-93

**December 9, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Pamela J. (McConnell) Neal ("Mother") appeals the trial court's order modifying custody and child support in connection with her son, D.L.M. On appeal, Mother raises the following consolidated and restated issues:

I. Whether the trial court abused its discretion by failing to make a record of its *in camera* interview with D.L.M.; and

II. Whether the trial court's modification of custody and child support was contrary to law and to the evidence.

We affirm in part, reverse in part, and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

David A. McConnell ("Father") and Mother were married in 1989, and dissolved their marriage in 2008. Three children were born to the marriage, two of whom, D.A.M. and D.L.M., were minors at the time of the 2008 dissolution. On December 10, 2008, Mother and Father tendered a decree of dissolution of marriage and settlement agreement ("Settlement Agreement"), which the trial court approved. The Settlement Agreement provided that: (1) the parties would share joint legal and physical custody, with the children alternating visitation between Mother and Father every seven days; and (2) Father would pay child support for D.A.M. and D.L.M. in the total amount of $268.00 per week. *Appellant's App*. at 200.

In June 2009, Father filed a petition for modification of child support. After evidence was heard, the matter was taken under advisement and, on August 13, 2009, the trial court reduced Father's child support payments to $124.00 per week, retroactive to June 19, 2009. *Appellant's App*. at 2-3. In May 2010, Father and Mother each filed a

2

petition for modification of custody and parenting time obligations. *Id*. at 3. In December 2010, following a hearing and an *in camera* interview with D.A.M. and D.L.M, the trial court determined that it was in D.L.M.'s best interest to reside with Mother during the week, from Sunday evening through Friday evening, and with Father from Friday evening through Sunday evening. *Id*. at 4, 208. Summer vacations were to be split between the two parents. *Id*. Mother was designated as the custodial parent, and Father was ordered to pay $123.00 per week. *Id*. at 4-5, 209, 211. Father filed a motion to reconsider and a motion to correct error, both of which the trial court denied on January 20, 2011. *Id*. at 5.

Mother, acting pro se, filed a motion to modify child support on September 12, 2012. On October 5, 2012, Father filed a petition for modification of both custody and child support and filed a separate motion for a change of judge. Special Judge Nick Barry assumed jurisdiction over the case on January 10, 2013. About two weeks later, Father filed a motion requesting an *in camera* interview of D.L.M., which the trial court granted.

On February 1, 2013, the trial court heard evidence and argument on the modification petitions by Mother, who appeared pro se, and Father, who appeared through his counsel Matthew C. Moore ("Moore"). Following a hearing, the trial court took the matter under advisement. On February 4, 2013, the trial court conducted a telephone interview with D.L.M., and a week later, entered an order emancipating D.A.M. and modifying custody and child support of D.L.M. *Appellant's App*. at 223-27. Under the February 11, 2013 order, the parties' custody order returned to the original custody arrangement, where the parents alternated weekly custody. *Id*. at 224. The support

obligation was also modified, and Father's weekly payments were reduced from $123.00 per week to $3.00 per week. *Appellant's App*. at 211, 227.

On March 8, 2013, Mother filed a letter objecting to "the entire case," but "focusing solely on the child support." The trial court did not rule on or respond to the letter, which was later deemed to be a "motion to correct error." *Id*. at 228. Mother filed a notice of appeal, which our court deemed timely filed. Additional facts will be added where needed.

## DISCUSSION AND DECISION

At the outset we note that Mother's argument on appeal arises, in part, from the fact that she is unhappy that the trial court did not assist her when she acted as her own counsel. Mother contends that she "attempted to cross-examine [Father,]" but "[c]learly frustrated, [Mother] rested when the Court suggested that she take the stand instead to testify." *Appellant's Br.* at 7-8. She also contends that, "When *pro se* [Mother] rested on her own direct testimony without speaking about any support issues, no one brought that omission to her attention." *Id*. at 9 (citing *Appellant's App*. at 50-51). Finally, Mother asserts that "completely misguided and left waffling in that hearing, [Mother] failed to make a proper record." *Id*. at 10. In essence, Mother is complaining that, because of her unfamiliarity with trial procedure, she was unable to present much of the evidence in her favor. We are not persuaded. It is well settled that *pro se* litigants are held to the same standard as are licensed lawyers. *Goossens v. Goossens*, 829 N.E.2d 36, 43 (Ind. Ct. App. 2005). To the extent the evidentiary issues about which Mother complains were due to her own failure, we find no error.

## I.    *In Camera* Interview

Mother first contends that the trial court abused its discretion when it failed to make a record of its *in camera* interview of D.L.M.  Specifically, she contends that her due process rights were violated "by the denial of the Trial Court to record the *in camera* interview because it precluded [Mother] and this Court from reviewing evidence of [D.L.M.]'s wishes as to custody," and had she known her son's testimony, "she could have offered evidence to explain, rebut or clarify [D.L.M.'s] statements." *Appellant's Br*. at 14. Father responds that first, "there was never a refusal to record the *in camera* interview" because a recording "was never requested," and second, Mother could not have presented contradictory testimony as to D.L.M.'s wishes because those wishes were his alone. *Appellee's Br*. at 12.  Additionally, Father contends that the issue is waived because Mother had proper notice that an *in camera* interview had been requested, and any objections should have been presented at trial.

The events leading to the interview were as follows.  On September 7, 2012, Mother filed a petition for modification of child support, citing a loss of job as her changed circumstances. *Appellant's App*. at 213.  About one month later, Father filed a petition for modification of both child custody and child support, and asked the trial court to reflect the emancipation of D.A.M.  Father also filed a motion asking the trial court to hold an *in camera* interview with D.L.M.

During the modification hearing, the trial judge noted that he was inclined to grant Father's motion for the *in camera* interview. Thereafter, the following exchange occurred between the trial judge, Mother, and Father's attorney, Moore:

> COURT: . . . I would like to talk to young D.L.M. Would it be possible to do that by speaker phone? Your motion is that the child, no attorneys or the parties be present, would it be possible to do that by speaker phone since I am from Blackford County?
>
> MR. MOORE: Your Honor, I think we could do that. Maybe we could make arrangements to bring him here . . . to the Court so that he can have a room where he is, I mean, the Court can verify, I trust the Court staff well enough that if they make those arrangements, he's here, I don't, I'd prefer not to do it where he's at dad or mom's house. I just think that's a hard situation . . . for any child to be in . . .
>
> COURT: . . . and that would be off, off the record, non-recorded. Do you want to be heard on that, Mrs. Neal?
>
> [MOTHER]: Excuse me.
>
> COURT: Do you want to be heard on that, my idea of interviewing the child over the telephone?
>
> [MOTHER]: Oh, that's fine . . . I'm good with that.

*Tr*. at 46. The trial court and Mother then discussed the time frame that would allow Mother to get D.L.M. to the Henry County Courthouse for the interview. *Id*. at 47. D.L.M. telephonically participated in the interview, and thereafter, the trial court modified the custody schedule from five days visitation with Mother and two days visitation with Father to an alternating seven days visitation each.

Here, Mother not only failed to object to the trial court's decision to grant Father's request for an *in camera,* "off the record," "non-recorded" interview, but, when asked if

6

she wanted to be heard on the matter, Mother actually stated "that's fine." *Id*. at 46. Mother did not object to either the *in camera* interview or the method by which the trial court intended to conduct the interview; therefore, we find the issue waived. *See Trout v. Trout*, 638 N.E.2d 1306, 1307 (Ind. Ct. App. 1994) (holding that challenges to procedure utilized by trial court were waived by husband's failure to object to format of proceedings).

## II.    Modification of Custody and Support

Mother contends that the trial court's modification of custody and child support of D.L.M. was not supported by the evidence. We review custody modifications and child support modifications for an abuse of discretion. *See Kietzman v. Kietzman*, 992 N.E.2d 946, 948 (Ind. Ct. App. 2013) (custody modification reviewed for abuse of discretion); *see also In re Marriage of Kraft*, 868 N.E.2d 1181, 1185 (Ind. Ct. App. 2007) (child support modification reviewed for abuse of discretion). "The Indiana Supreme Court 'has expressed a preference for granting latitude and deference to our trial judges in family law matters . . . because of trial judges' unique, direct interactions with the parties face-to-face.'" *Kietzman*, 992 N.E.2d at 948 (quoting *T.L. v. J.L.*, 950 N.E.2d 779, 784 (Ind. Ct. App. 2011)). "Therefore, we do not substitute our judgment for that of the trial court if evidence and legitimate inferences therefrom support the trial court's judgment; this serves the interests of finality in custody matters. *Id*. at 948-49.

### A.    Custody

Mother contends that Father failed to meet his burden of proving a change in circumstances to warrant a custody modification. Pursuant to Indiana Code section 31-17-

7

2-21, a trial court may not modify a custody order unless the modification is in the best interests of the child and a substantial change has occurred in one or more of the following factors which a court may consider in initially determining custody:

(1)     The age and sex of the child.
(2)     The wishes of the child's parent or parents.
(3)     The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
(4)     The interaction and interrelationship of the child with:
(A) the child's parent or parents;
(B) the child's sibling; and
(C) any other person who may significantly affect the child's best interests.
(5)     The child's adjustment to the child's:
(A) home;
(B) school; and
(C) community.
(6)     The mental and physical health of all individuals involved.
(7)     Evidence of a pattern of domestic violence by either parent.
(8)     Evidence that the child has been cared for by a de facto custodian . . .

Ind. Code § 31-17-2-8.

"In the initial custody determination, both parents are presumed equally entitled to custody, but a petitioner seeking subsequent modification bears the burden of demonstrating the existing custody should be altered." *Kirk v. Kirk,* 770 N.E.2d 304, 307 (Ind. 2002). Custody matters typically turn on factual determinations and will be set aside only if such determinations they are clearly erroneous. *Baxendale v. Raich,* 878 N.E.2d 1252, 1257 (Ind. 2008). We will not reverse a child custody decision if any evidence or legitimate inferences from such evidence support the trial court's judgment. *Id.* at 1257-58. "The concern for finality in custody matters reinforces this doctrine." *Id.* "'On appeal it is not enough that the evidence might support some other conclusion, but it must

8

positively require the conclusion contended for by appellant before there is a basis for reversal.'" *Kirk,* 770 N.E.2d at 307 (quoting *Brickley v. Brickley,* 247 Ind. 201, 204, 210 N.E.2d 850, 852 (1965)).

Pursuant to the original Settlement Agreement the parties shared joint legal and physical custody, and the children alternated between Mother's and Father's care every seven days ("seven-seven custody"). In December 2010, following a hearing on a petition for modification of custody, the trial court determined that D.L.M. was at risk of being held back a grade and that, it would be less disruptive academically and in D.L.M.'s best interest, to stay with Mother on school days and with Father on the weekends ("five-two custody"). *Appellant's App*. at 208.

In 2012, both parties again filed petitions to modify custody and support. On February 1, 2013, the trial court heard argument on the parents' modification petitions. Father testified that the parties had adhered to the five-two custody from December 2010 through June 2011, at which time the parties changed to their summer schedule of seven-seven custody. *Tr*. at 6. In August of 2011, even though the five-two custody order remained in place, the parties continued to follow the seven-seven custody arrangement. *Tr*. at 7. Mother testified, "[O]nly reason I let the children go back and forth seven days on, seven days off is because at first, that's what they had desired." *Id*. at 31. Father testified that the seven-seven custody continued throughout the 2011-2012 school year. *Id*. at 7. However, on August 28, 2012, after Father expressed his disapproval concerning Mother having given D.L.M. a moped for his birthday, Mother required the parties to return

9

to the five-two custody schedule. *Id*. at 7-8. After the hearing but before ruling, the trial court held a telephonic *in camera* interview with D.L.M. to ask him about his wishes regarding custody arrangements.

On February 11, 2013, the trial court made the following pertinent findings:

4.     The respondent in this cause requests that the Court consider a change of custody with regard to . . . [D.L.M]. The previous order . . . found changing from a week to week custody schedule to a week day schedule with the petitioner and weekend time with the respondent was in the best interest of the child so the child attain [sic] some degree of academic success. The reason for the Court's finding for the change in circumstances and that a change was necessary and in the best interest of the child was primarily the poor performance of [D.L.M.] at [school] . . . and the weekly change in households leaves [D.L.M.] "unsettled and unable to focus on his homework" . . . . While the Court did find that both the petitioner and the respondent support [D.L.M.] academically, the Court found that it was in the best interest of [D.L.M.] to change custody to the schedule of [five-two custody].

5.     The respondent now claims that the previous Court's order should be modified due to the fact that [D.L.M.] is not adjusting to the home life and school requirements under the five days spent with the petitioner during the school week and two days with the respondent on the weekends. The respondent claims that he does not have sufficient time to spend meaningful time with his son and, at the same time, work with [D.L.M.] to achieve an acceptable level of academic success. Since the time of the previous Court's order, the parties have deviated from the previous Court's order by returning to a seven and seven schedule with a good portion of the seven and seven schedule falling when [D.L.M.] was in school. The respondent has shown to the satisfaction of the Court that 1) the Court's previous Court's order did not have the anticipated effect of creating such a positive home learning environment to assist [D.L.M.] academically and 2) that [D.L.M.] has shown progress academically and behaviorally when the parties returned to the alternating weekly custody arrangements of the child. The Court has considered whether a modification is in the best interests of [D.L.M.] under Indiana Code section 31-17-2-21, the wishes of [D.L.M.] and those factors listed under Indiana Code

10

Section 31-17-2-8. The Court finds that a modification of the previous Court's order is justified and shall be the order of the Court. Specifically, the Court finds that the current arrangement for the custody of [D.L.M.] . . . has affected the adjustment of [D.L.M.] in his school and that modification of said order to return to the custody schedule to a weekly arrangement between the petitioner and the respondent is in the best interest of [D.L.M.].

*Appellant's App*. at 224-25.

Mother contends that Father presented insufficient evidence to prove a change in circumstances warranted a custody modification and that the trial court did not find that such modification was in D.L.M.'s best interest. Based on the trial court's findings, we disagree.

## B.    Support

Mother also contends that the trial court abused its discretion in modifying child support payments such that Father's weekly payments were reduced to $3.00 per week. The Settlement Agreement provided that the parties would share joint legal and physical custody, with a seven-seven custody arrangement. Pursuant to the child support obligation worksheet, Father who was given credit both for 183 nights of parenting time and for health premiums, was ordered to pay child support for D.A.M. and D.L.M. in the amount of $268.00 per week. *Appellant's App*. at 200, 206. Due to a reduction in both parents' incomes, in December 2010, the child support amount was reduced to Father being obligated to pay Mother $123.00 per week for his two unemancipated sons. *Appellant's App*. at 209, 211. "In 2012, because the middle son, [D.A.M.], was emancipated and living independently, [Mother] voluntarily accepted (without going to court) a less support from

11

Father in the amount of $67.00 per week." *Appellant's Br.* at 16 (citing *Appellant's App.* at 228). Mother lost her job in July 2012 and thereafter filed a petition for modification of child support. *Appellant's App.* at 213. The trial court held a hearing, completed a child support obligation worksheet ("worksheet"), and determined that Father's weekly child support obligation should be reduced to $3.00 per week. For the following reasons, we find that the trial court abused its discretion.

During the February 1, 2013 hearing, Father, who had not yet prepared his 2012 Federal Income Tax return, introduced into evidence his 2011 returns filed on Form 1040X. In response to Moore's questioning, Father stated that his business income was $19,652.00. *Tr.* at 25; *Appellant's App.* at 160. This number was calculated from taking "$94,182 which is your gross income[,] minus contract labor [in the amount of] $56,969, plus your other deductible expenses, that's what your income is." *Tr.* at 26; *Appellant's App.* at 160. The trial court used Father's stated business income of $19,652 to complete the child support obligation worksheet ("worksheet"). *Appellant's App.* at 160. Dividing that dollar amount by fifty-two weeks, the trial court arrived at $377.93, and included that dollar amount on line 1 of the worksheet to reflect Father's "weekly gross income."

We find that the trial court abused its discretion by using the $19,652 figure. Guideline 3.A.2. of the Indiana Child Support Guidelines ("Guidelines") provides in pertinent part as follows:

> 2. *Self-Employment, Business Expenses, In-Kind Payments and Related Issues.* Weekly Gross Income from self-employment, operation of a business, rent, and royalties is defined as *gross receipts minus ordinary and necessary expenses.* In general, these types of *income and expenses from*

12

*self-employment or operation of a business should be carefully reviewed to restrict the deductions to reasonable out-of-pocket expenditures necessary to produce income*. These expenditures may include a reasonable yearly deduction for necessary capital expenditures. *Weekly Gross Income from self-employment may differ from a determination of business income for tax purposes.*

Expense reimbursements or in-kind payments received by a parent in the course of employment, self-employment, or operation of a business should be counted as income if they are significant and reduce personal living expenses. Such payments might include a company car, free housing, or reimbursed meals.

Ind. Child Support Guideline 3(A)(2) (emphasis added). Here, the record before us reveals that, on his 2011 income tax return, Father listed his "total gross receipts" as $142,312. We remand to the trial court to make a determination of Father's "weekly gross income" under the Guidelines, based on a determination of his "gross receipts minus ordinary and necessary expenses." *Id*. We also remind the trial court that, pursuant to Guideline 3(B):

In all cases, a copy of the worksheet which accompanies these Guidelines shall be completed and filed with the court when the court is asked to order support. This includes cases in which agreed orders are submitted. Worksheets shall be signed by both parties, not their counsel, under penalties for perjury.

*See also Beardsley v. Heazlitt*, 654 N.E.2d 1178, 1181 (Ind. Ct. App. 1995) (worksheet requirement is particularly important where, as here, petitioner is self-employed).

Furthermore, we find that the trial court also abused its discretion when it calculated the "parenting time credit," which was credited to Mother on line 7 of the worksheet. *Appellant's App*. at 227. Under the Guidelines, a parenting time credit is awarded for the number of overnights each year that the children spend with the non-custodial parent. Child Support. G. 6.

13

The commentary to Guideline 6 provides:

> A frequent source of confusion in determining child support arises in cases where parents equally share the parenting time with the children. Parenting time is considered equally shared when it is 181 to 183 overnights per year. To determine child support in these case, either the mother or father must be designated as the parent who will pay controlled expenses. Then the other parent is given the parenting time credit. The controlled expenses remain the sole obligation of the parent for whom the parenting time credit is not calculated.

Under the Settlement Agreement, the parenting time was shared, but Father was given the parenting time credit. *Appellant's App*. at 206. In other words, the trial court designated Mother as the parent who would pay the controlled expenses. Child Support. G. 6, commentary. When support was modified in 2010, Father was again given the parenting time credit. *Id*. at 211. From our calculation, it appears that the trial court deemed Mother to be the one for whom the duplicate expenses should be reimbursed and gave the credit time to Mother. We find nothing in the record before us that would have changed the trial court's designation of Mother as the parent who would pay for controlled expenses. On remand, the trial court shall calculate and give the parenting time credit to Father.

We affirm the trial court's modification of child custody, reverse the trial court's modification of child support, and remand for proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded with instructions.

ROBB, C.J., and RILEY, J., concur.

14